ELEANOR KUBECK *v.*
FOREMOST FOODS COMPANY, INC., ET AL.
(10921)

SPEZIALE, C. J., PETERS, PARSKEY, SHEA and GRILLO, Js.

Argued May 4—decision released July 19, 1983

*Thomas F. Keyes, Jr.,* for the appellant (plaintiff).

*Paul V. McNamara,* for the appellee (defendant).

SPEZIALE, C. J. This appeal is from a denial of the plaintiff's petition for a new trial on the ground of newly discovered evidence. The underlying action for personal injuries arose from a rear end collision between the plaintiff's automobile and a truck driven by the defendant's employee. Summary judgment was granted for the plaintiff on the issue of liability, and a trial to a jury was held on the issue of damages. The plaintiff's challenge to the adequacy of the judgment of $10,000 rendered for her after that trial was rejected by this court on appeal. *Kubeck* v. *Foremost Foods Co.,* 179 Conn. 486, 489, 427 A.2d 391 (1980).

In February, 1979, while the original judgment was on appeal, the plaintiff petitioned for a new trial pursuant to General Statutes § 52-270.[1] The plaintiff's com-

[1] At the time of this action, General Statutes (Rev. to 1979) § 52-270 stated: "Sec. 52-270. CAUSES FOR WHICH NEW TRIALS MAY BE GRANTED. The superior court may grant a new trial of any cause that may come before it, for mispleading, the discovery of new evidence or want of actual notice

plaint alleged that following the trial she had discovered material evidence in her favor which could not have been discovered prior to trial. She further claimed that in light of that newly discovered evidence, the verdict and judgment were inadequate and unjust, and that a new trial would produce a different result.

"The function of a court at a hearing for a new trial is to determine whether the evidence presented at the hearing considered with the evidence presented at the original trial warrants the granting of a new trial. That determination is within the sound discretion of the court. *Pass* v. *Pass,* [152 Conn. 508, 510, 208 A.2d 753 (1965)]; *Krooner* v. *State,* 137 Conn. 58, 62 [75 A.2d 51 (1950)]; *Gannon* v. *State,* 75 Conn. 576, 578–79 [54 A. 199 (1903)]." *Reilly* v. *State,* 32 Conn. Sup. 349, 356, 355 A.2d 324 (1976). "The basic question which the trial court has to decide is whether upon all the evidence an injustice had been done"; *Turner* v. *Scanlon,* 146 Conn. 149, 163, 148 A.2d 334 (1959); and "whether it is probable that on a new trial a different result would be reached." *Taborsky* v. *State,* 142 Conn. 619, 623, 116 A.2d 433 (1955). "A petition for a new trial is addressed to the discretion of the trial court and will never be granted except upon substantial grounds. As the discretion which the court is called upon to exercise is not an absolute but a legal one, we will upon appeal set aside its action when it appears that there was a misconception on its part as to the limits of its

of the suit to any defendant or of a reasonable opportunity to appear and defend, when a just defense in whole or part existed, or the want of actual notice to any plaintiff of the entry of a nonsuit for failure to appear at trial or dismissal for failure to prosecute with reasonable diligence, or for other reasonable cause, according to the usual rules in such cases. The judges of the superior court may in addition provide by rule for the granting of new trials upon prompt request in cases where the parties or their counsel have not adequately protected their rights during the original trial of a cause." Slight changes, not relevant here, were made in this section by Public Acts 1982, No. 82-160.

power, that there was error in the proceedings preliminary to the exercise of its discretion, or that there was a clear abuse in its exercise of its discretion. *Wood* v. *Holah,* 80 Conn. 314, 315, 68 A. 323 [1907]." *E. M. Loew's Enterprises, Inc.* v. *Surabian,* 146 Conn. 608, 610–11, 153 A.2d 463 (1959).

The plaintiff has the burden of proving that the evidence was in fact newly discovered; that it would be material to the issue on a new trial; that it could not have been discovered and produced on the former trial by the exercise of due diligence; that it is not merely cumulative; and that it is likely to produce a different result in a new trial. *Burr* v. *Lichtenheim,* 190 Conn. 351, 355, 460 A.2d 1290 (1983); *Pass* v. *Pass,* supra, 511; *Taborsky* v. *State,* supra, 623; *Krooner* v. *State,* supra, 60; *Hamlin* v. *State,* 48 Conn. 92, 93, (1880).

The record in this case reflects that on September 4, 1975, the plaintiff's automobile was struck from behind by a truck driven by the defendant's employee. From that time until just before trial the plaintiff was treated on an almost continuous basis by several doctors and therapists in an attempt to alleviate pain and stiffness in her neck and shoulder. X-rays were taken periodically. At all times, the plaintiff followed the therapeutic directions and recommendations of the various doctors who treated her. At no time up to the original trial did any of the doctors diagnose a problem relating to a cervical disc injury. The trial court found after the hearing on the petition for a new trial that "[t]he final diagnosis after this abundance of treatment, etc., was that the plaintiff had sustained a musculoligamentous sprain of the neck and shoulder and that she had a fifteen percent disability of that

area."[2] The trial of the original action ended in a jury verdict for the plaintiff of $10,000 on December 21, 1978.

After the original trial, the plaintiff continued to complain of severe neck pain. As a result, a new x-ray was taken on February 15, 1979, about two months after the original trial. This x-ray showed for the first time a small bone spur or osteophyte in the area of the fifth disc space. Because of this newly discovered symptom, one of the plaintiff's doctors proposed exploratory surgery to determine whether there was damage to the disc. Only during the surgery was it affirmatively determined that the fifth cervical disc was damaged. The plaintiff presented medical testimony at the hearing that after discovery and treatment of the disc problem she had between a 30 and 75 percent permanent partial disability of the neck, whereas the original diagnosis indicated only a 15 percent disability.[3] The trial court found that the injury to the disc and the ensuing treatment were causally related to the motor vehicle accident and that the treatment of the plaintiff's injuries after the original trial resulted in additional expenses of at least $25,000 to $30,000.

Despite the facts set out above, the trial court found the issues on the plaintiff's petition for a new trial in favor of the defendant on the basis that the plaintiff failed to show that the newly discovered evidence could not have been discovered with due diligence before the first trial. Although the trial court's memorandum of decision does not articulate clearly the reasons for this

---

[2] A musculoligamentous sprain of the neck is commonly referred to as "whiplash."

[3] Lycurtus M. Davey, a physician, testified that at the time of the hearing the disability was between 30 percent and 40 percent. Hubert B. Bradburn, a physician, estimated that the disability was 75 percent.

conclusion, it does state that "it would appear that earlier X-rays could have revealed what the X-rays of 1979 eventually did reveal."[4]

Due diligence does not require omniscience. "Due diligence means doing everything reasonable, not everything possible." *People* v. *Sullivan,* 97 Mich. App. 488, 493, 296 N.W.2d 81 (1980). The question which must be answered is not what evidence might have been discovered, but rather what evidence would have been discovered by a reasonable plaintiff by "persevering application, [and] untiring efforts in good earnest." *People* v. *Redston,* 139 Cal. App. 2d 485, 494, 293 P.2d 880 (1956).

In this case, the plaintiff was continuously treated by qualified doctors from the time of the accident until the time of trial. She scrupulously followed their suggestions for treatment. She had x-rays taken periodically. At no time was it suggested to her that she might have a disc problem.[5] There was no evidence tending to show that the plaintiff's reliance on professional medical advice was unreasonable. What else could she have done?

The conclusion of the trial court that the plaintiff failed to exercise due diligence is supportable only if the failure of the doctors to discover the disc problem may be imputed to the plaintiff. The relationship between a litigant and the treating physician is not one of agency which would require that the litigant be

---

[4] In this case, there is no evidence on the record to support this inference of the trial court. This finding is, therefore, clearly erroneous. Practice Book § 3060D; *J & J Enterprises of Lenoir, Inc.* v. *Shaw,* 190 Conn. 321, 322, 460 A.2d 1283 (1983).

[5] A myelogram, which might or might not have shown the disc injury, had not been performed because the plaintiff was allergic to the iodine-based dye used in that procedure.

responsible for the acts of the physician.[6] As long as the plaintiff has used reasonable care in the selection of a doctor, has cooperated fully in diagnosis of an injury and has followed the treatment prescribed in a reasonable manner, the failure of the doctor to discover an injury may not be used as evidence of a lack of due diligence on the part of the plaintiff for purposes of a petition for a new trial. We therefore hold that it was error for the trial court to reject the plaintiff's petition on the basis of lack of due diligence.

The parties do not dispute that the record amply demonstrates that the newly discovered evidence met all of the other requirements for granting a new trial. The bone spur was first discovered almost two months after judgment in the original action, and is therefore in fact newly discovered. The court found a causal relationship between the disc injury and the motor vehicle accident, so the newly discovered evidence will be material to the issues on a new trial.[7] Because there is evidence of greatly increased disability, of substantial new expenses,[8] and of increased pain, the new evidence is not merely cumulative. For these reasons, a new trial, limited to damages as was the first trial, is likely to produce a different result. Because the record also clearly shows that the due diligence requirement was also met, we hold that the trial court abused its discretion when it failed to find that upon all the

[6] The rule is different, of course, when a party's attorney is not diligent in discovering evidence, because the attorney-client relationship is one of agency. *Link* v. *Wabash R. Co.,* 370 U.S. 626, 633–34, 82 S. Ct. 1386, 8 L. Ed. 2d 734, reh. denied, 371 U.S. 873, 83 S. Ct. 115, 9 L. Ed. 2d 112 (1962); see *Smith* v. *Erftmier,* 210 Neb. 486, 494, 315 N.W.2d 445 (1982).

[7] Both doctors called by the plaintiff at the hearing on her petition for a new trial testified that her disc problems were causally related to the original motor vehicle accident. The trial court found that "[t]here is no basis for questioning their respective and joint analyses and opinions."

[8] The trial court found that these additional medical expenses alone amounted to $25,000 to $30,000.

evidence an injustice had been done and that it is probable that on a new trial a different result would be reached.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the plaintiff on her petition for a new trial.

In this opinion the other judges concurred.