KATHLEEN Y. MATSUMOTO, Plaintiff-Appellant, *v.* WILLIAM ASAMURA, Defendant and Third-Party Plaintiff-Appellee, *v.* EUGENE BAYOT, SOLEDAD BAYOT and FRANK BAYOT, Third-Party Defendants-Appellees

NO. 9991

(CIVIL NO. 60996)

AUGUST 15, 1985

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY TANAKA, J.

Plaintiff Kathleen Y. Matsumoto (Matsumoto), now known as Kathleen Yap Hise, appeals the denial of her motion for new trial on the grounds of newly discovered evidence. The dispositive issue is whether the trial court abused its discretion in denying Matsumoto's motion. We answer no and affirm.

On March 16, 1979, an automobile driven by William Asamura (Asamura) and in which Matsumoto was a passenger was involved in an accident with a car driven by Frank Bayot (Bayot), a minor. Alleging personal injuries resulting from the accident, Matsumoto sued Asamura on March 28, 1980. Asamura, in turn, filed a third party complaint against Bayot and his parents, Eugene and Soledad Bayot (the three are collectively referred to as the Bayots).

A jury trial of the case was held from February 28 through March 4, 1983. In its verdict upon special interrogatories, the jury found that (1) Asamura was 20% negligent and Bayot, 80%; and (2) Matsumoto was entitled to recover $2,250 for past medical expenses, $1,220 for past wage loss, and $5,030 for "general damages, including future medical expenses and future wage loss," or a total of $8,500. On June 3, 1983, a judgment was entered accordingly.[1]

On March 16, 1984, Matsumoto filed a motion for new trial based on newly discovered evidence.[2] She claimed that on August 27, 1983, Thomas H. Sakoda, M.D. had performed a diskogram operation which revealed that "the disks in her neck area are abnormal and are currently degenerating." Record, Vol. 3, at 21. She further claimed that based on the newly discovered evidence the jury verdict and the judgment "appear to be grossly inadequate." Record, Vol. 3, at 16.

On April 30, 1984, the trial court denied the motion,[3] and Matsumoto appealed.

---

[1] In addition to the $8,500, the amount of the jury's verdict, the court awarded Matsumoto costs of $606.13 and prejudgment interest of $2,972.50.

[2] The motion for new trial was made pursuant to Rule 60(b)(2), Hawaii Rules of Civil Procedure (HRCP) (1981), which provides:
   (b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: . . . (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)[.]
Rule 59(b), HRCP (1981), states:
   (b) Time for Motion. A motion for a new trial shall be served not later than 10 days after the entry of judgment.

[3] The trial court was not required to issue findings of fact and conclusions of law on the motion, Rule 52(a), HRCP (1981), and it did not.

## I.

Whether a motion for new trial based on newly discovered evidence is made under Rule 59 or Rule 60(b)(2), Hawaii Rules of Civil Procedure (HRCP) (1981), the applicable standard of appellate review of the order granting or denying the motion is the abuse of discretion test.

The trial court's grant or denial of a Rule 59, HRCP, motion for new trial on any grounds "will not be reversed absent a clear abuse of discretion." *Harkins v. Ikeda,* 57 Haw. 378, 380, 557 P.2d 788, 790 (1976). *See also Stahl v. Balsara,* 60 Haw. 144, 587 P.2d 1210 (1978); *Deponte v. Ulupalakua Ranch, Ltd.,* 49 Haw. 672, 427 P.2d 94 (1967) (claim of newly discovered evidence involved); *Lovell Enterprises, Inc. v. Campbell-Burns Wood Products, Inc.,* 3 Haw. App. 531, 654 P.2d 1361 (1982); *City & County v. Ambler,* 1 Haw. App. 589, 623 P.2d 92 (1981). Likewise, a Rule 60(b), HRCP, motion for relief from a judgment is addressed to the discretion of the court and appellate review is based on the abuse of discretion standard. *See* 11 Wright & Miller, Federal Practice and Procedure, *Civil* § 2857 (1973); *Hayashi v. Hayashi,* 4 Haw. App. 286, 666 P.2d 171 (1983); *Paxton v. State,* 2 Haw. App. 46, 625 P.2d 1052 (1981).

Matsumoto contends that the trial court abused its discretion in denying her motion for new trial. We disagree for the reasons stated below.

## II.

*Orso v. City & County,* 56 Haw. 241, 534 P.2d 489 (1975), states the general rule as follows:

> [A] new trial based on newly discovered evidence can be granted provided the evidence meets the following requirements: (1) it must be previously undiscovered even though due diligence was exercised; (2) it must be admissible and credible; (3) it must be of such a material and controlling nature as will probably change the outcome and not merely cumulative or tending only to impeach or contradict a witness.

*Id.* at 250, 534 P.2d at 494.

Moreover, in *Deponte v. Ulupalakua Ranch, Ltd., supra,* the supreme court cautioned:

" '* * * There are but few cases tried in which new evidence cannot be hunted after trial, and in order to secure to parties the termination of their legal controversies the Court must be wary about granting new trials upon insufficient excuses for not procuring the evidence when the parties had their day in Court.' "

*Id.* at 673, 427 P.2d at 95 (quoting from *Territory v. Young,* 32 Haw. 628, 640 (1933), which, in turn, quoted from *Burns v. Bowler,* 4 Haw. 303, 304 (1880) ).

The foregoing standards apply whether the motion based on newly discovered evidence is made pursuant to Rule 59 or Rule 60(b)(2), HRCP. *See* 11 Wright & Miller, Federal Practice and Procedure, *Civil* § 2859 (1973).

The *Orso* test requires the exercise of due diligence in discovering the "new evidence." Appellees (Asamura and the Bayots) argue that if Matsumoto had exercised due diligence she would have been able to discover the new evidence prior to trial. The trial court apparently agreed[4] and we find no error in that regard.

### A.

Matsumoto contends that "[d]ue diligence does not require that [she] undergo all possible operations prior to the time of trial[.]" Record, Vol. 3, at 15. The record[5] indicates, however, that an abnormal or degenerative cervical disk condition was very likely and due diligence required her submission to a diskogram operation or some equivalent type of diagnostic procedure prior to trial.

On March 19, 1979, three days after the accident, Matsumoto

---

[4] Although the April 30, 1984 order does not specify the reason for the denial of Matsumoto's motion for new trial, at the conclusion of the hearing on the motion the trial court stated:

At this time the Court is going to deny the motion for new trial. Although the evidence may have been newly discovered, the Court does find that from the record the evidence could have been discovered prior to trial.

Transcript of April 18, 1984 hearing at 8.

[5] The record does not include the transcript of the jury trial.

consulted Robert Thune, M.D., about pain in her neck, lumbosacral area, left arm, and left leg.

On March 21, 1979, she saw Masao Takai, M.D., an orthopedic surgeon, who diagnosed her condition as cervical and back strain, placed her in a cervical collar, and prescribed medication for her pain. She remained under Dr. Takai's care continually up to the time of the jury trial. The medical records (Exhibit 24) indicate that she saw Dr. Takai approximately 22 times in 1979, four times in 1980,[6] 15 times in 1981, and 14 times in 1982. Her main complaints during the period were basically pain in her neck and headaches.

In April 1979, Dr. Takai referred her to Raymond M. Taniguchi, M.D., a neurological surgeon, whose impression was that there was "no evidence of any residual nerve damage or injury[.]" Exhibit 24, Dr. Taniguchi's April 14, 1979 medical report.

Because of her persistent headaches, in July 1981, Dr. Takai referred her to Michael M. Okihiro, M.D., a neurologist, who found "no evidence of any significant neurological impairment." Exhibit 24, Dr. Okihiro's August 29, 1981 medical report. Thereafter, in September 1981, Dr. Takai had her consult Mutsuoki Kai, M.D., a psychiatrist.

Due to her continued complaints, in January 1982, Dr. Takai had Matsumoto consult Dr. Taniguchi again. Dr. Taniguchi's review of her cervical spine films indicated that they "all appeared to be within normal limits." Exhibit 24, Dr. Taniguchi's January 23, 1982 medical report.

Matsumoto's complaints regarding pain in her neck and left shoulder and headaches persisted. Suspecting "degenerative cervical disk problem" (Record, Vol. 3, at 66), Dr. Takai referred her to Dr. Sakoda for a diskogram. Dr. Sakoda examined her on December 11, 1982. However, no diskogram operation was performed then because Matsumoto had had a bad reaction from a previous myelogram and did "not want to do any type of test at the present time." Exhibit 24, Dr. Sakoda's December 11, 1982 medical report. It is elementary that no diskogram operation could be performed without Matsumoto's consent. On August 27, 1983, almost six months after the jury verdict, however, a diskogram

---

[6] Matsumoto was pregnant in 1980 and gave birth on July 20, 1980.

operation performed by Dr. Sakoda revealed evidence of an abnormal and degenerating cervical disk condition.

In her affidavit attached to the motion for new trial, Matsumoto stated:

> 6. Prior to the trial in this case, she had not undergone a diskogram operation because she had been informed by her physicians that surgical intervention was not necessary at the time.

Record, Vol. 3, at 19. However, the record contains contrary evidence. When his deposition was taken on January 19, 1983, Dr. Takai testified as follows:

> It is still my feeling she may have so-called degenerative cervical disk problem, which is not really, you know, obvious so anybody can detect that, and only answer for this could be the diskogram.

Record, Vol. 3, at 66.

Dr. Sakoda's deposition testimony of February 23, 1983, includes the following:

> Q. Did she [Matsumoto] indicate who suggested a diskogram?
>
> A. Dr. Takai, I believe.
>
> Q. That was the reason why she was here on that date [December 11, 1982] to see you.
>
> A. Yes; that was my understanding.

Transcript of Deposition of Thomas A. Sakoda, M.D. at 14.

Furthermore, in his December 29, 1982 letter to Dr. Takai, Dr. Sakoda wrote that Matsumoto "has a severe distaste for any diagnostic testing based on her previous experience with myelography." Exhibit 24.

In concluding that Matsumoto failed to exercise due diligence,[7] the trial court must have found the contrary evidence of Dr. Takai and Dr. Sakoda to be credible and reasonably inferred therefrom that both doctors had recommended a diskogram operation in December 1982 which Matsumoto refused to accept. We find no error in this regard.

---

[7] *See* n.4 *supra.*

## B.

In the prosecution of her appeal, Matsumoto relies heavily on the case of *Kubeck v. Foremost Foods Co.,* 190 Conn. 667, 461 A.2d 1380 (1983). Like Matsumoto, the plaintiff in *Kubeck* suffered pain and stiffness in her neck and shoulder. A post-trial exploratory surgery determined that her fifth cervical disk was damaged. There, the appellate court reversed the trial court's denial of plaintiff's motion for new trial on the grounds of newly discovered evidence.

The facts in *Kubeck,* however, are dissimilar to those in this case. In *Kubeck,* the court stated that

> She [plaintiff] scrupulously followed [her doctors'] suggestions for treatment. She had x-rays taken periodically. *At no time was it suggested to her that she might have a disc problem.*

*Id.* at 672, 461 A.2d at 1383 (footnote omitted and emphasis added). Here, Matsumoto's doctors suggested to her that she might have a degenerating cervical disk problem and she failed to follow their recommendation to undergo a diskogram operation. She chose to go to trial without a diskogram.[8]

## III.

Accordingly, we hold that the trial court did not abuse its discretion in denying Matsumoto's motion for new trial.

Affirmed.

*Cedric Choi (John B. Shimizu* with him on the briefs; *Foley, Maehara, Judge, Choi, Nip & Okamura,* of counsel) for plaintiff-appellant.

*John T. Komeiji (Lyle Y. Harada* with him on the brief); *Kobayashi, Watanabe, Sugita & Kawashima,* of counsel) for defendant and third-party plaintiff-appellee.

*Eric T.W. Kim (Douglas T.Y. Lee* with him on the brief; *Rice, Lee & Wong,* of counsel) for third-party defendants-appellees.

---

[8] The depositions of Dr. Takai and Dr. Sakoda were taken on the eve of the scheduled trial. Upon learning that a degenerative cervical disk problem was suspected and a diskogram surgery had been recommended, Matsumoto's counsel should have sought a continuance of the trial to schedule a diskogram or other equivalent diagnostic procedure.