[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION AS TO POST VERDICT MOTIONS
The above-captioned case is before this court for decision of various motions filed by the defendant Dick Corporation and the crossclaim defendant, Maguire Group, after a jury rendered verdicts in favor of the plaintiffs on their claims and in favor of defendant Metcalf Eddy on its claim against Maguire Group.
At trial, the jury was charged with deciding the personal injury claims asserted by Albert Sandella in connection with a fall at the North Haven sewer treatment plant. Sandella and his CT Page 7489 wife, Cheryl Sandella, who filed a claim for damages for loss of consortium arising from her husband's injuries, claimed that both the Dick Corporation and Metcalf Eddy were legally responsible for failing to remedy a slippery condition on a metal staircase where the plaintiff claimed that water was being allowed to mix with a transparent polymer used at the plant. The defendants claimed in special defenses that Sandella's own negligence caused his fall and his injuries.
As to these claims, the jury found that Dick Corporation was sixty-five percent at fault, Metcalf Eddy was ten percent at fault and Albert Sandella was twenty-five percent at fault. The jury found that full damages, undiminished by the plaintiff's percentage of fault, were $950,000.00 for economic losses, $594,220.00 for noneconomic losses for Albert Sandella and $594,220.00 for his wife on her claim of noneconomic losses as to her loss of consortium claim. The jury accordingly applied the percentages of liability found and apportioned damages such that the verdict against Dick Corporation was $1,389,986.06 and the verdict against Metcalf Eddy was $213,844.00.
After the jury rendered its verdict on the plaintiff's claims, the parties to the cross claim presented additional evidence and argument as to that claim and the jury was charged with rendering a verdict on the crossclaim of Metcalf Eddy alleging a right to contractual indemnification from the Maguire Group. The jury found in favor of Metcalf Eddy as to that claim and awarded the sum of the amount of the verdict in favor of the plaintiffs against Metcalf Eddy plus counsel fees provided for in the indemnification agreement.
The trial was lengthy and it involved a great number of witnesses, many of whom were brought from other states. The plaintiffs' claim was that as a result of his fall on July 19, 1990, Albert Sandella sustained a severe back injury. He testified that he spent several weeks after his fall in bed in a body cast and that when no other treatments relieved the pain in his back, he underwent surgery in November or December 1991 in which bone was grafted into four vertebrae of his lower back and stabilized with surgical screws. The surgical hardware was removed in December 1992. Evidence was submitted to the effect that after some period of relief, the fusion failed, and the plaintiff testified that he has chronic back pain for which he continues to be treated and which keeps him from sitting or standing or doing most other activities comfortably. He presented CT Page 7490 medical testimony and records concerning his treatment and the condition of his back at various times after his fall. During the long trial the plaintiff was visibly uncomfortable. He shifted his position often, moved with difficulty, and stood up periodically during his testimony. His present physician, Dr. Mark Thimoneur from the Yale Center for Pain Management, causally related the plaintiff's condition to his fall in 1990 and painted a pessimistic picture of the plaintiff's prospects for improvement, predicting that the plaintiff would require treatment for years and had a less than forty percent chance of ever returning to work.
The defendants did not offer any evidence based on examinations by doctors secured by them to investigate the nature or extent of the plaintiff's claimed disability.
Motion for New Trial
Defendant Dick Corporation has filed a motion for new trial in which it asserts the discovery after the verdict of new evidence that it believes would lead to a different result on retrial. After some delay to accommodate the trial and vacation schedules of the four lawyers involved, this court held an evidentiary hearing on this motion on July 14, 1997.
Though Dick Corporation had attached affidavits of eight people to its motion, it presented testimony from only six of them, all members of the family of Gina Giaquinto, who is engaged in a bitter divorce and acrimonious custody battle with Joseph Giaquinto, the brother of plaintiff Cheryl Sandella. Gina Giaquinto's father, Richard Esposito, saw a newspaper account of the verdict in this case and contacted the counsel for Dick Corporation, offering to testify as to occasions on which Albert Sandella did not appear disabled. Richard Esposito contacted the other five witnesses, all relatives or spouses of family members of Gina Giaquinto. The substance of their testimony was limited to observations of Albert Sandella's activity on three occasions: 1) dancing at the wedding of Gina and Joseph Giaquinto on April 3, 1993; 2) assisting Joseph Giaquinto on August 13, 1995 when he moved his belongings out of the home he shared with Gina, and 3) playing volley ball at a graduation party in May 1994 (this statement was made only by Gina Giaquinto). The defendants also presented a videotape of the Giaquinto wedding reception in which the plaintiff can be seen during some of the footage. CT Page 7491
The defendants claim that the evidence presented constitutes newly discovered evidence that warrants a new trial pursuant to Conn. Gen. Stat. § 52-270. The standard that governs adjucation of a motion for new trial based on a claim of newly discovered evidence is well established, and the parties agree that the standard is the same whether the underlying trial was civil or criminal. A party that seeks a new trial based on newly discovered evidence must demonstrate by a preponderance of evidence that 1) the proffered evidence is newly discovered, such that it could not have been discovered earlier by exercise of due diligence; 2) it would be material upon a new trial; 3) it is not merely cumulative; and 4) it is likely to produce a different result in a new trial. Asherman v. State, 202 Conn. 429, 430
(1987); Kubeck v. Foremost Foods Co., 190 Conn. 667, 670 (1983).
The court finds that the motion should be denied because the third and fourth requirements are not met. Contrary to the movant's assertions, the jury was presented at trial with evidence that Albert Sandella was not continuously disabled to the same degree from the date of his fall to the date of trial. Reports from Dr. Kenneth Kramer indicated that during the time frame of the April 1993 wedding, Sandella had had the fusion hardware removed and was "generally comfortable" (Exh. 9). The jury had before it reports from the surgeon who had performed the fusion that in late 1991, in March 1993 and again in March 1994 it was his opinion that Sandella could return to work even though he still complained of pain. Contrary to the suggestion of the movants, the activities of Sandella at the April 1993 wedding were not in contrast to what the jury had heard his condition was during that period. The court's inspection of the video of the wedding reception indicates that the plaintiff was dancing freely during some active dances but wincing while pretending to participate during the song "YMCA". Sandella had not testified that he was unable to dance or engage in mild activity in the spring of 1993; rather, the medical reports that were before the jury indicated that his back was less symptomatic during that period and became symptomatic again when the fusion failed.
Contrary to the movant's suggestion, the plaintiff did not claim to have been totally disabled at all times after his fall. In addition to the medical testimony referred to above, the jury heard testimony from one of the defendants' witnesses, George Caughman, to the effect that he observed Sandella supervising a repair job at a sewer treatment plant in late 1991 or early 1992. Based on the testimony of Dr. Thimoneur, the jury may well have CT Page 7492 believed that the plaintiff had ups and downs but that, as that physician testified, ultimately the fusion failed, leaving the plaintiff to take painkillers and to attempt such unusual treatment as prolo therapy without much hope of ever being without back pain for the rest of his life. The new evidence of the plaintiff's level of physical activity at his brother-in-law's wedding was cumulative of other testimony concerning periods when he was minimally affected by the condition of his back.
The testimony concerning the other two occasions at which the witnesses claimed to have seen the plaintiff engaged in strenuous activity do not satisfy the requirement of Asherman and Kubeck
that the newly discovered evidence be likely to produce a different result in a new trial. Gina Esposito, the only witness who testified that the plaintiff played volleyball at a graduation party, was unmistakably vengeful toward the plaintiff, who had taken the side of her husband in the divorce and who had participated in the increasingly bellicose exchanges when Joseph Giaquinto was picking up his toddler son for court-supervised visitation. On some such occasions, Gina Giaquinto's parents, brother, and other relatives gathered to heckle Sandella's brother-in-law, whom Gina had accused of abusing the child. On one occasion at which Sandella accompanied his brother-in-law to drop off the boy Gina Giaquinto's brother brandished a gun and members of the Sandella\Giaquinto faction filed complaints with the police. Albert Sandella attended an administrative hearing to oppose the restoration of the brother's gun permit. Even before the divorce proceedings began, the acrimony between the two families was such that the Esposito faction forbade Joseph Giaquinto from letting the Sandellas see his son. The court in which the Giaquinto divorce is pending finally resorted to having the transfer of the child take place at designated police stations. Albert Sandella is clearly identified by the Esposito family as an adversary: he has attended at least four of the sessions in the stormy divorce proceedings and is on the Giaquinto side in the warfare over the hapless child.
In testifying about the day Joseph Giaquinto went with his brother and Sandella to move his belongings out of his marital house, the witnesses described a scenario in which Gina had assembled at least ten members of her family at a time when she knew that her estranged husband would be coming to remove his possessions. The Esposito family exhibited great solidarity in testifying; indeed their extreme solidarity and the identical CT Page 7493 nature of their accounts made them incredible.
Joseph Giaquinto and Gerald Giaquinto testified that Sandella carried no heavy items but was present to render minor aid and because he had rented the van they were using. The demeanor of the witnesses presented by the movants and the evidence as to their extreme family loyalty and motive of vengeance in a bitter and long-playing dispute convince this court overwhelmingly that a jury would conclude that the testimony concerning moving furniture and playing volley ball are the inventions or exaggerations of angry, vengeful people motivated by an opportunity to hurt Joseph Giaquinto by hurting his sister and her husband as part of a poisonous and no-holds-barred feud.
The plaintiffs presented evidence to contradict the testimony of the Esposito family members. That testimony was consistent with the contemporaneous medical reports concerning the plaintiff's condition.
The motion for a new trial is denied.
Motion for Remittitur of Award to Cheryl Sandella
The defendants urge the court to order a remittitur as to the award to Cheryl Sandella for loss of consortium. The testimony was such that the jury could have found that Cheryl Sandella had been deprived of most of the benefits of her relationship with her husband. Instead of having the hearty, robust, active companion who had accompanied her to dancing lessons and loved participating in sports, the jury heard evidence to support a conclusion that since the failure of the fusion she has suffered and will suffer years with an inactive, withdrawn person whose primary preoccupations are his pain, limitation, and medical regimens. While not every juror would have valued such a loss as equivalent to the noneconomic damages suffered by the person who actually sustained the physical injury, the award to Cheryl Sandella "falls somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case."Campbell v. Gould, 194 Conn. 35, 39 (1994), citing Briggs v.Becker, 101 Conn. 62, 66 (1924). The amount of the award, while considerable, does not "so shock the sense of justice as to compel the conclusion that the jury were influenced by partiality, prejudice, mistake or corruption." Id.
The intangible components of consortium are the CT Page 7494 "constellation of companionship, dependence, reliance, affection, sharing and aid which are legally recognizable, protected rights arising out of the civil contract of marriage." Hopson v. St.Mary's Hospital, 176 Conn. 485, 487 (1979). Damages for loss of consortium include future as well as past loss of such benefits.Shegog v. Zabrecky, 36 Conn. App. 737, cert. denied,232 Conn. 922 (1957).
This court did not observe anything concerning the trial on the jury's conduct to suggest any improper behavior, mistake or corruption.
The motion for remittitur is denied.
Motion to Set Aside Verdict
Dick Corporation moves that the verdict be set aside on the ground that the jury could not reasonably have found that it had notice of the condition that caused the plaintiff's fall. A jury verdict is to be set aside if "the verdict is manifestly unjust because, given the evidence presented, the jury mistakenly applied a legal principle or because there is no evidence to which the legal principles of the case could be applied." Novakv. Scalesse, 43 Conn. App. 94, 97 (1996) citing Maroun v. Tarro,35 Conn. App. 391, 396, cert. denied, 231 Conn. 926 (1994). A verdict should not be set aside when the jury could reasonably have based its verdict on the evidence. American National FireInsurance Co. v. Schuss, 221 Conn. 768, 774 (1992). The constitutional right of litigants to have issues of fact determined by a jury is "an obviously immovable limitation on the legal discretion of the court to set aside a verdict . . ." Youngv. Data Switch Corp., 231 Conn. 95, 101 (1994). The plaintiffs have set forth in their brief in opposition to Dick Corporation's post-trial motions a summary of the evidence upon which the jury could justifiably have based a conclusion that Dick Corporation had control of the premises, a duty to keep the premises reasonably safe, a duty and opportunity to discover the presence of polymer and spurting water and, because of the extreme dangers posed by such a mixture, a duty to inspect the area where the fall took place before any workers had occasion to be present each morning.
As to the issue of the charge on proximate cause, the movant submitted no request to charge on this topic. Contrary to the implication advanced, no party was precluded from submitting any CT Page 7495 charge on any subject but was given the option to rely on the court's choice of changes. When Dick Corporation requested a supplemental charge on proximate cause, the court gave it. Dick Corp. did not at trial and does not now offer any explanation of the reasoning by which the jury could have found its actions to be a substantial factor in causing the plaintiff's injury but not a cause in fact.
Dick Corporation's motion to set aside the verdict is denied.
Maguire Group's Motion to Set Aside Plaintiff's Verdict
Maguire Group has moved to set aside the verdict rendered in favor of the plaintiffs as to their claims against Dick Corporation and Metcalf Eddy. The plaintiffs object that no verdict was rendered in their favor against Maguire Group, and that this motion should not be considered, since Maguire Group is attempting to assert claims on behalf of Metcalf Eddy, which made the tactical decision not to pursue such claims. Specifically, Maguire Group claims that the jury lacked evidence upon which to base a finding of liability against Metcalf Eddy because, in its view, the plaintiff sued the wrong Metcalf 
Eddy. Because Metcalf Eddy filed a cross claim against Maguire Group for indemnification for any damages that the plaintiff recovered from Metcalf Eddy, such that Maguire Group would face exposure from the verdict on the plaintiff's claim, this court permitted counsel for Maguire Group to cross examine witnesses as to the plaintiff's claims. Maguire Group elicited testimony to the effect that there are two entities known as Metcalf Eddy, one located in Wakefield, Massachusetts and one fully titled Metcalf Eddy Services, Inc., located in Danvers, Mass. Maguire Group took the position that since the plaintiff served Metcalf 
Eddy in Wakefield, it had sued an entity other than the one that had provided management services under a contract with Maguire Group. To the consternation of Maguire Group, Metcalf Eddy chose not to pursue this defense. There are a number of reasons why it may have chosen not to do so, perhaps because of the potential prospect of a renewed suit based on the accidental failure of suit statute, C.G.S. § 52-592. Under Constitutional principles, Metcalf Eddy was entitled to its own legal counsel and pursuit of its own legal strategies at trial, and Maguire Group has identified no duty of Metcalf Eddy to follow, instead, the strategies it preferred.
In its crossclaim against the Maguire Group, Metcalf Eddy CT Page 7496 had alleged in paragraph 4 that "On or about March 29, 1990, the defendants Metcalf Eddy and the Maguire Group, Inc. entered into an Agreement whereby Metcalf Eddy agreed to provide an interim plant manager at the North Haven water pollution control facility. A copy of said Agreement is attached hereto as Exhibit A." Maguire Group had admitted this allegation in its answer to the cross claim, dated October 19, 1993. Statements made in pleadings, even those that are later amended, are evidentiary admissions. See Tait LaPlante Handbook of Connecticut Evidence,
(2d ed.) § 6.7.1. Metcalf Eddy would have been justified in deciding that it might destroy its credibility with the jury if it were to assert a separate corporate identity after affirmatively alleging in its cros claim that it was a party to the contract at issue and had in fact been the entity providing managerial services at the North Haven facility, since the plaintiffs could have presented its pleading in evidence.
Contrary to the assertion of the Maguire Group, the jury was not required to believe the testimony of Ronald Collins, especially since counsel for Metcalf Eddy did not argue that the defendant sued was not the correct defendant. The jury could have concluded that even if there were two corporations that had the names "Metcalf Eddy" as part of longer official names, the "Metcalf Eddy" that was the defendant was the shortened version of the name of the corporation that employed Ronald Collins. The jury could have concluded that the plaintiffs had merely failed to state the full name rather than that they had sued the wrong entity.
Maguire Group's Motion to Set Aside the plaintiff's verdict against Metcalf Eddy is denied.
Maguire Group's Motion to Set Aside Verdict Against it on Cross Claim
Maguire Group has moved to set aside the jury's verdict on the cross claim, in which Metcalf Eddy sought contractual indemnification. Again, Maguire Group claims that its contract was not with "Metcalf Eddy" but with "Metcalf Eddy Services, Inc." Contrary to the Maguire Group's position, the documents claimed to give rise to a contract were admissible because they were relevant to the crossclaim. The court could not have ruled them inadmissible because the identity of the parties was disputed and ambiguous: it was for the jury to resolve the claimed ambiguity. Under the standard applicable to motions to set aside a verdict, which are set forth above, the jury could CT Page 7497 reasonably have concluded that "Metcalf Eddy" was merely shorthand for "Metcalf Eddy Services, Inc.", not a reference to a separate corporation. Ronald Collins, the employee who was supplied pursuant to the contract, sometimes spoke of "Metcalf 
Eddy" and sometimes of "Metcalf Eddy Services, Inc." in his testimony. The Maguire Group offered no official corporate documents to establish that the entities were in fact totally separate corporations.
The Maguire Group further claims that the jury could not have reasonably found that the indemnification claim was not rendered unenforceable by the provisions of C.G.S. § 52-572k. The applicability of that statute depended on whether the jury considered the services covered by the management contract to be "entered into in connection with or collateral to a contract or agreement relative to the construction, alteration, repair or maintenance of any building structure or appurtenance thereto . . ." Evidence was presented to the effect that Ronald Collins was filling in as manager to operate the waste treatment facility after the town's manager left.
From the contents of the documents and from the description of the tasks being performed by Ronald Collins, the jury was warranted in finding that the contract was one for managerial services, not a contract described in Sec. 52-572k, which applies to indemnification clauses only in the kinds of transactions described in the statute. See Burkle v. Carolina Truck LeasingCo., Conn. App. 54, [1 Conn. App. 54], 57 (1983). The jury could, within the evidence, have concluded that the contract at issue was not of the sort described in § 52-572k.
The motion of Maguire Group to set aside the verdict on the crossclaim is denied.
Conclusion
The motions of Dick Corporation for a new trial, to set aside the verdict and for remittitur are denied.
The motions of Maguire Group to set aside the verdict for the plaintiff against Metcalf Eddy and the motion to set aside the verdict on the crossclaim are denied.
Beverly J. Hodgson Judge of the Superior Court CT Page 7498