[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: PETITION FOR NEW TRIAL
On January 28, 2000, this court entered a deficiency judgment in favor of the defendant and against the plaintiffs in this action. The plaintiffs Jerome G. Terracino and Guardian Systems, Inc. bring this action seeking a new trial on the grounds that they have discovered new evidence material to the issues in the matter, which, if presented during trial, would likely have resulted in a different outcome.
The court heard evidence on the petition on November 29th and November 30, 2000. The parties submitted post trial memoranda on January 8, 2001, and the court heard argument on January 29, 2001.
In its memorandum of decision in the matter of FDIC v. MutualCommunications, Superior Court, judicial district of Litchfield, Docket No. 067158 (October 20, 1999, DiPentima, J.), the court noted the following procedural history.
CT Page 3198 The Federal Deposit Insurance Corporation (FDIC) brought this action in three counts. The first count seeks a foreclosure of the mortgage securing the note as [to] the defendant Mutual Communications Associates, Inc. In the second count, the plaintiff seeks damages under and breach of four individual guaranty agreements guaranteeing the note of the first count. The defendants DeMarsico, Rossman, Terracino and Guardian Systems are the guarantors/defendants. The third count alleges a security in collateral of the first named defendant.
 On December 16, 1996 a judgment of foreclosure by sale entered. That judgment was opened and a judgment of strict foreclosure entered with law days commencing March 25, 1997. Prior to this judgment JLM Services Corporation succeeded the FDIC as plaintiff, and title vested in JLM when defendant Mutual failed to redeem its equity. JLM filed this motion for deficiency on April 1, 1997.
 [W]hile this motion was pending JLM assigned the note, guaranties and deficiency claim to Andrew J. Buzzi, Jr., Trustee, who assigned them to Consolidated Asset Management, who assigned them to the present plaintiff Fairway Asset Management.
Id.
The court then found the following facts:
 The court finds the following facts by a fair preponderance of the evidence. Andrew J. Buzzi, Jr., attorney and friend of defendant Rossman made efforts in June of 1997 to negotiate a purchase of the note, mortgages and deficiency by Rossman from JLM Services Corporation. These efforts were unsuccessful. On July 7, 1997, Buzzi as trustee purchased the note, guarantees and deficiency claim from JLM. On July 23, 1997, Buzzi as trustee sold the same to Consolidated Asset Management, LLC, whose officers were Buzzi and Catherine Rossman, wife of defendant Rossman. Because Rossman was Buzzi's client in July 1997, Buzzi wrote a letter of disclosure of this transaction to Rossman on July 23, 1997. Rossman signed the letter, acknowledging the disclosure and seeking a continuance CT Page 3199 of the attorney client relationship with Buzzi. Catherine Rossman formed Consolidated Asset to protect the joint assets. She intended to pursue a judgment against Guardian and Terracino. Consolidated Asset sold the note, guarantees and deficiency to the present plaintiff, Fairway Asset, in October 1998. Rossman never owned the note. There was no evidence of an agreement with Fairway Asset not to pursue judgment against Rossman.
Id.
Ultimately the court found that neither Buzzi nor Catherine Rossman were acting as. agents for Rossman. It then concluded that "neither Rossman nor his agents purchased the note, guarantee and debt. . . ." Id.
This court's role in a hearing for a new trial is to determine whether "the evidence presented at the hearing considered with the evidence presented at the original trial warrants the granting of a new trial."Kubeck v. Foremost Foods Co., 190 Conn. 667, 669 (1983). In its determination here, the court is further guided by the following law:
 [A] party is entitled to a new trial on the ground of newly discovered evidence if such evidence is, in fact, newly discovered, will be material to the issue on a new trial, could not have been discovered and produced, on the trial which was had, by the exercise of due diligence, is not merely cumulative and is likely to produce a different result. . . .
(Citations omitted.) Davis v. Fracasso, 59 Conn. App. 291, 296 (2000). It is the plaintiff's burden to prove the above by a preponderance of the evidence. Jacobs v. Fazzano, 59 Conn. App. 716, 723 (2000).
In their petition, the plaintiffs claim that three pieces of evidence newly discovered and material to the special defenses raised in the first action would likely produce a different result. The three pieces of evidence are correspondence between Buzzi and Darcy Kochiss Ellis, attorney for JLM, dated July 2, 1997, and July 3, 1997. The plaintiffs claim that this evidence is material because of the following findings and conclusion of this court in its memorandum of decision in the first action:
 There is not sufficient evidence for this court to find that Buzzi or Catherine Rossman were acting as CT Page 3200 agents for Rossman. Buzzi's letter to Rossman does not support this argument as to Buzzi.
* * *
 Because the Court concludes that neither Rossman nor his agents purchased the note, guarantee and debt, it need not address the defendant's arguments premised on the opposite conclusion.
FDIC v. Mutual Communications, supra, Docket No. 067158.
At the hearing on the petition, the court heard testimony from Buzzi, both Rossmans, Robert Maniscalco, and A. Reynolds Gordon. Maniscalco is an attorney whose firm represented JLM in the sale of the note, guaranties and deficiency to Buzzi. Gordon is the attorney representing these plaintiffs in the first action.
Based on the testimony and the other probative evidence presented at this hearing and the evidence presented at the original trial, the court concludes as follows. Exhibits 1, 2 and 3, the July 2 and 3, 1997 correspondence, constitute evidence that was newly discovered by the plaintiffs in this action. The credible evidence, essentially undisputed, was that neither the plaintiffs nor their attorney Gordon had ever seen these exhibits. The evidence was discovered from the files of JLM's attorney for the purchase of the note, guaranties and deficiency. As to the element of materiality, the court determines that this newly discovered evidence would affect some of the court's findings in the original action, specifically that Buzzi was unsuccessful in negotiating the purchase of the note by Rossman. In fact, Exhibit 1 shows that the JLM accepted the last offer by Buzzi on behalf of Rossman for $30,000.
The more problematic issue is whether the plaintiffs exercised due diligence.
 [T]o entitle a party to a new trial for newly-discovered evidence, it is indispensable that he should have been diligent in his efforts fully to prepare his cause for trial; and if the new evidence relied upon could have been known with reasonable diligence, a new trial will not be granted.
Ginsburg v. Cadle Company, 61 Conn. App. 388, 392 (2001).
The evidence at the hearing was that originally Gordon requested through subpoena and notice of deposition that Buzzi bring his file CT Page 3201 regarding the purchase and negotiations for purchase of the note that is the subject of the foreclosure to a deposition held in November, 1997. Buzzi then brought his file to the deposition but did not allow Gordon to review it. Buzzi reviewed the file and handed documents to Gordon. The following exchange occurred during the deposition:
 Q Is there more correspondence in negotiations with Attorney Ellis other than the first letter?
A Yeah, there is.
 Q Do you want to pull that out, please. Can I peek at the ones you have pulled out just to save us a minute.
A Just give me a minute.
Q Sure.
 MR. GORDON: You are not interested in the fax cover sheets, are you?
MR. HECHT: The fax cover sheets? No. I am not interested in the fax cover sheets.
Q Can I look at some of these while you are —
 MR. GORDON: I'm going to mark as Exhibit 4 for identification a group of letters between Mr. Buzzi and Darcy Ellis at the Reed Maniscalco law firm. There are six letters in all. They are June 5, `97 — Buzzi to Ellis; June 5, `97 — Buzzi to Ellis; June 6, `97 — Ellis to Buzzi; June 17, `97 — Buzzi to Ellis; June 17, `97 — Ellis to Buzzi; June 24, `97 — Buzzi to Ellis. All of these are one page letters and they are Being marked as a group. We will paperclip them for you now And staple them when we find a stapler.
 (Whereupon six letters, Buzzi/Ellis, were marked collectively as Defendant's Deposition Exhibit 4 for identification.)
 Q Showing the witness Exhibit 4 for identification, do these represent correspondence between you and Darcy Ellis representing JLM in the spring and summer of CT Page 3202 `97?
A Yes.
(Buzzi Deposition at 28-29.)
While Buzzi produced 6 pieces of correspondence dated from June 5, 1997, to June 25, 1997, he did not hand over Exhibits 1, 2 and 3.[1] At the time of trial, while the subpoena directed to Buzzi did not request documents, Buzzi brought the same file that he brought to the 1997 deposition. Buzzi was not asked at trial to produce any other correspondence in addition to the six letters he produced at his deposition.
A resolution of this issue rests upon a determination of whether Gordon exercised due diligence in relying on the responses Buzzi gave at his deposition and not making further efforts at discovery. The court has reviewed the deposition transcript of November 18, 1997, the trial testimony of Buzzi of August 23 and September 2, 1999, and the hearing testimony of Buzzi and Gordon of November 29 and November 30, 2000.
The court sympathizes with the plaintiffs in their argument that Gordon relied upon the fact that Buzzi was an attorney in not pursuing more vigorously documents from his file. There are two reasons that this is not a satisfaction of the requirement of due diligence. First of all, Buzzi, not a party or counsel in this action, did represent persons or entities that were involved in the transactions documented in his file. Secondly, at the deposition there was no follow up question to Buzzi confirming that all the correspondence had been produced. Nor was there a request for a court order. Finally, at trial Buzzi was not asked to review his file for all the correspondence relating to the transaction. Shortly after judgment entered, the plaintiffs obtained Exhibits 1, 2 and 3 from another source. There is no reason given that this could not have been done prior to trial.
 Due diligence does not require omniscience. "Due diligence means doing everything reasonable, not everything possible." People v. Sullivan, 97 Mich. App. 488, 493, 296 N.W.2d 81 (1980). The question which must be answered is not what evidence might have been discovered, but rather what evidence would have been discovered by a reasonable plaintiff by "persevering application, [and] untiring efforts in good earnest." People v. Redston, 139 Cal.App.2d 485, 494, 293 P.2d 880 (1956).
CT Page 3203Kubeck v. Foremost Foods, supra, 190 Conn. 672. Under this definition of due diligence, the court cannot find for the plaintiffs.
Notwithstanding its determination that the plaintiffs failed to establish due diligence as as to the newly discovered evidence, the court considers the plaintiffs' argument that Rossman's purchase of the note, guaranties and deficiencies should result in the defendant's inability to enforce the note except for pursuing contribution rights against co-guarantors. While the plaintiffs have cited considerable out of state authority to support this argument, the court cannot accept it.
The specific guaranty signed by the defendant Terracino contains the following language:
 11. The Guarantor expressly agrees that its obligations and liabilities hereunder shall in no way be released, lessened, or impaired by reason of the release of, or unenforceability of any agreement or undertaking by any other guarantor or other party liable, whether primarily or secondarily, for the repayment of all or any part of the Indebtedness.
 22. If there is more than one Guarantor of all or any portion of the indebtedness, their liability shall be joint and several.
(Plaintiff's Exhibit 1 in FDIC v. Terracino, supra, dated 8/23/99).
The language of the guaranty does not support the plaintiffs argument that, as coguarantors, Terracino and Guardian have contribution rights in this deficiency judgment action limiting their liability to the defendant, the present holder of the note, guaranties and deficiency. Furthermore, there is simply no persuasive authority under Connecticut foreclosure law to support such a conclusion. See Crotta v. Home Depot,Inc., 249 Conn. 634, 639-40 (1999) (party may assert right of contribution after it has been compelled to pay entire sum); see alsoDennler v. Dodge Transfer Corp., 201 F. Sup. 431, 439-40 (1962) ("ordinarily, a joint obligor may not maintain an action for contribution or indemnification until he has paid more than his share of the judgment").
As noted most recently by our Appellate Court, there is an equitable underlying principle furthered by the strict standards for granting a new trial. "Once a judgment is rendered it is to be considered final and should be left undisturbed by post trial motions except for a good and compelling reason." State v. Weiner, 61 Conn. App. 738, 752 (2001). As to CT Page 3204 this defendant, there is no equitable or legal reason to disturb the judgment entered in its favor. For the reasons set forth above, the court finds that the plaintiffs' have not met their burden of meeting those strict standards, and that no compelling reason exists to grant their petition for a new trial. Accordingly, the petition is denied.
DiPentima, J.