## FLOYD WILLIAMS *v.* COMMISSIONER OF CORRECTION
### (14076)

Dupont, C. J., and O'Connell and Spear, Js.

Argued January 17—officially released May 28, 1996

*James A. Shanley, Jr.*, special public defender, for the appellant (petitioner).

*Frederick W. Fawcett*, assistant state's attorney, with whom, on the brief, were *Donald A. Browne*, state's attorney, and *Gerard Eisenman*, assistant state's attorney, for the appellee (respondent).

DUPONT, C. J. The petitioner, Floyd Williams, appeals from the denial of his petition for a writ of habeas corpus. The petitioner was convicted of one count of felony murder in violation of General Statutes § 53a-54c. The conviction was upheld. *State* v. *Williams*, 220 Conn. 385, 599 A.2d 1053 (1991). The petitioner subsequently filed a petition for a writ of habeas corpus claiming (1) that his trial counsel rendered ineffective assistance and (2) that he is factually innocent. After conducting an evidentiary hearing, the habeas court rejected both of the petitioner's claims and certified its decision for review by this court. We affirm the judgment of the habeas court.

A thorough review of the evidence produced at the petitioner's habeas hearing, coupled with relevant facts from the petitioner's criminal trial, is necessary to adjudicate properly the issues presented in this appeal. In the petitioner's appeal from the judgment rendered in the criminal trial, our Supreme Court stated that the jury could have found reasonably the facts that follow.

"On August 28, 1989, in the early hours of the morning, the victim, Orville Grant, and Mervin Needham were walking on Sixth Street in Bridgeport when they were

approached by the [petitioner] and two other men. The [petitioner] and his two companions all were armed with guns. The [petitioner] forced the victim and Needham to lie on the ground while he rifled Needham's pockets for what turned out to be $5 in cash. The [petitioner] then ordered both men into a nearby yard and again forced them to lie down. After some discussion, all three assailants began shooting. As a result of this assault, Grant died of a gunshot wound to the head.

"Just prior to trial, the state filed an amended long form information charging the defendant in a seven count information with violations of the following [G]eneral [S]tatutes: (1) felony murder, General Statutes § 53a-54c; (2) murder, General Statutes § 53a-54a (a); (3) attempted murder, General Statutes §§ 53a-49 and 53a-54a (a); (4) robbery in the first degree, General Statutes § 53a-134 (a) (2); (5) attempted assault in the first degree, General Statutes §§ 53a-49 and 53a-59 (a) (1); (6) assault in the second degree, General Statutes § 53a-60 (a) (2); and (7) carrying a pistol without a permit, General Statutes § 29-35. On August 21, 1990, a jury found the defendant guilty of the single count of felony murder. The trial court sentenced the defendant to a term of sixty years imprisonment." Id., 387–88. The judgment was affirmed on appeal. Id., 400.

The petitioner brought this habeas corpus action by way of an amended petition in two counts. In the first count, the petitioner alleged ineffective assistance of his trial counsel, under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution.[1] In the second count, the petitioner alleged that he was factually innocent and that he suffered a miscarriage of justice

---

[1] The defendant has failed to provide us with any analysis of his claim under the Connecticut constitution, and, therefore, we choose not to review this claim under the Connecticut constitution. *State* v. *Scarpiello*, 40 Conn. App. 189, 198 n.4, 670 A.2d 856 (1996).

because exculpatory testimony from available witnesses was never presented during his criminal trial.

## I

## INEFFECTIVE ASSISTANCE OF COUNSEL

In the first count, the petitioner claimed that his trial counsel, Attorney Arnaldo E. Granados, provided ineffective assistance at the petitioner's criminal trial by (1) failing to advise the petitioner as to the potential merits of accepting a plea offer to a substitute charge of manslaughter in the first degree; (2) inadequately investigating and cross-examining Needham; (3) failing to call Ulysses Smith as a defense witness; (4) failing to pursue adequately a motion for a bill of particulars that had been filed previously; (5) inadequately investigating and failing to present the testimony of David Womack and Joseph Aranjo as defense witnesses.

The habeas court evaluated the petitioner's claims of ineffective assistance of counsel pursuant to the standard set forth in *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).[2] Under *Strickland*, the petitioner must show that (1) defense counsel's performance was not reasonably competent or within the range of competence expected of attorneys with ordinary training and skill in criminal law; id., 687–88; and (2) but for counsel's substandard performance, there is a reasonable probability that the result of the proceeding would have been different. Id., 694. The habeas court concluded that none of the petitioner's claims of ineffective assistance of counsel met the conditions set forth in *Strickland*.

On appeal, the petitioner challenges the habeas court's conclusion that the petitioner failed to show

[2] Our Supreme Court adopted the two-pronged analysis of *Strickland* v. *Washington*, supra, 466 U.S. 668, to determine if a counsel's assistance was ineffective. *Bunkley* v. *Commissioner of Correction*, 222 Conn. 444, 455, 610 A.2d 598 (1992); *Sekou* v. *Warden*, 216 Conn. 678, 690, 583 A.2d 1277 (1990).

that his trial counsel provided ineffective assistance by failing to present the exculpatory testimony of Aranjo at the criminal trial. The petitioner claims that the habeas court improperly evaluated the credibility of Aranjo in dismissing that claim of ineffective assistance of counsel.

The habeas court focused on the prejudice component of the *Strickland* standard to dispose of the claim that Granados, the petitioner's attorney, provided ineffective assistance of counsel by failing to present the exculpatory testimony of Aranjo at the criminal trial. A habeas court deciding an ineffective assistance of counsel claim need not address the question of counsel's performance, if the claim may be disposed of on the ground of an insufficient showing of prejudice. *Pelletier* v. *Warden*, 32 Conn. App. 38, 46, 627 A.2d 1363, cert. denied, 227 Conn. 920, 632 A.2d 694 (1993).

A review of the testimonies provided at the habeas hearing by the petitioner, Granados, and Aranjo is necessary to resolve this claim. The petitioner testified that he informed Granados that "[the petitioner] had seen [Aranjo] [the] night [of the shooting] and that [Aranjo] might know more information." The petitioner also testified that his sister told Granados that Aranjo "had seen something." The petitioner stated that it was his understanding from speaking to Granados, that Granados had spoken with Aranjo and that he would be called as a witness at the criminal trial.

Granados testified that he represented the petitioner from December, 1989, until the petitioner's sentencing. Granados' case file for the petitioner's criminal case was subpoenaed through the office of the chief public defender. Granados identified the case file, but could not be certain that it was the complete file. Granados testified that he recognized a document contained in the case file entitled "investigation request" and admit-

ted that he prepared that request on January 25, 1990. The investigation request reads: "Please interview and take statement from Joseph Aranjo, Jr. at 951 Aranistan Avenue, 3rd floor, Bridgeport, Connecticut. Telephone (203) 367-6295. Our client indicates that this man is an eyewitness to the murder and that Ulysses Smith was the person who committed the crime and not [the petitioner]." Attached to the investigation request was a handwritten document that reads: "Michael call him over the weekend—Joseph Aranjo, Jr. Come to the office Monday for statement. Re: Floyd Williams." Granados testified that that document "seems to be a note to one of the investigators, but I don't know who made the note." Granados admitted that he had obtained Aranjo's name approximately seven months prior to the start of the criminal trial. Granados, however, did not recall issuing a subpoena for Aranjo to testify and could not recollect the reason why he did not call Aranjo as a witness at the criminal trial.

Aranjo testified at the habeas hearing that he was walking along Sixth Street in Bridgeport to visit his girlfriend, Amy Pettway, just prior to the shooting. As Aranjo approached her residence, he observed a group of people consisting of Grant, Ulysses Smith, Raymond Tucker, and a fourth person that Aranjo could not identify gathered across the street. Aranjo also observed the petitioner walking along Sixth Street toward him on the same side of the street. Aranjo heard someone from the group call to the petitioner and saw the petitioner cross Sixth Street to join the group. Aranjo then saw the petitioner throw up his arms and walk away from the group. About thirty seconds later, Aranjo saw Smith and Tucker pull guns and start shooting at Grant and the unidentified person. Aranjo dove for cover behind some bushes. Aranjo saw the unidentified person and Grant start to run, and then saw Grant fall about "five cars down or six cars down" from where

the group was assembled at the time when Aranjo first observed the group. After the shooting stopped, Aranjo entered Pettway's residence and told her that "there were some guys out there shooting." Later that evening, Aranjo looked out of the window of Pettway's residence and observed the police investigating the scene. Aranjo testified that he never reported what he observed to the police because he "really didn't want to be involved" because "it leads to trouble." After Aranjo discovered that the petitioner was arrested, Aranjo still did not report the shooting to the police and instead, went to the petitioner's sister and informed her about the shooting.

The habeas court concluded that the petitioner "failed to prove that there exists a reasonable probability that the outcome of his criminal trial would have been different if Aranjo was called as a witness because that testimony lacks veracity." The trial court noted that the petitioner's testimony at his criminal trial failed to indicate that the petitioner saw Aranjo on the night of the shooting. Moreover, the habeas court found "[t]he most important factor belying Aranjo's version of events is that he stated that the deceased victim, Grant, was struck down on the opposite side of the street from Pettway's residence, about five or six car lengths up from where the group had gathered. Grant was killed by a shot to the head, and his corpse was found by Richard Linton some distance up a driveway next door to Pettway's residence at around 10 a.m. the following morning." The habeas court further found it "implausible that Aranjo could have forgotten such a significant fact that Grant ran up the driveway of the property adjacent to his girlfriend's residence. It is highly improbable that Aranjo could have forgotten on which side of the street Grant was struck down. It is similarly unlikely that the police who investigated the area shortly after the shooting would have overlooked Grant's body if it actually lay where Aranjo stated it to be."

In a habeas corpus appeal, we cannot and will not disturb underlying historical facts found by the habeas court unless they are clearly erroneous. *Siano* v. *Warden*, 31 Conn. App. 94, 95, 623 A.2d 1035, cert. denied, 226 Conn. 910, 628 A.2d 984 (1993); *Veal* v. *Warden*, 28 Conn. App. 425, 428, 611 A.2d 911, cert. denied, 224 Conn. 902, 615 A.2d 1046 (1992). " 'When determining whether those facts constitute a violation of the petitioner's right to effective assistance of counsel, however, this court is not bound by such a limited standard of review, because such a determination is a mixed determination of law and fact that requires the application of legal principles to the historical facts of this case.' " *Siano* v. *Warden*, supra, 95–96, quoting *Veal* v. *Warden*, supra, 428; *Phillips* v. *Warden*, 220 Conn. 112, 131, 595 A.2d 1356 (1991).

The petitioner has failed to demonstrate that the habeas court's factual findings are clearly erroneous or that the application of legal principles to those facts constitutes a violation of his sixth amendment rights. The petitioner has not put forth any argument that disputes the inconsistencies of Aranjo's testimony, as found by the habeas court, in light of the evidence that was before the jury at the criminal trial. The petitioner, instead, argues that the habeas court improperly applied the prejudice component of the *Strickland* standard because it failed to consider the totality of the evidence before the jury and the habeas court. We are not persuaded.

"In a case that is tried to the court, such as the present case, the judge is the sole arbiter of the credibility of witnesses, and the weight to be given to their specific testimony." *Copas* v. *Warden*, 30 Conn. App. 677, 682, 621 A.2d 1378, on appeal after remand, 234 Conn. 139, 662 A.2d 718 (1995); *Tyson* v. *Warden*, 24 Conn. App. 729, 736, 591 A.2d 817, cert. denied, 220 Conn. 909, 597 A.2d 340 (1991). The habeas court evaluated Aranjo's

testimony in light of the totality of the evidence that was before the jury at the petitioner's criminal trial and the evidence produced at the habeas hearing, and found that "Aranjo's testimony is unworthy of belief." The habeas court could have concluded properly that the petitioner's claim could not be sustained under the prejudice component of the *Strickland* standard because the petitioner failed to show that there is a reasonable probability that, but for Granados' alleged ineffectiveness, the outcome of his criminal trial would have been different. The performance of the petitioner's trial counsel, therefore, did not deprive him of his constitutional right to the effective assistance of counsel.

## II

## ACTUAL INNOCENCE

The petitioner claims that the habeas court applied the incorrect legal standard in denying the petitioner's claim of actual innocence.[3] We conclude that the petitioner's claim of actual innocence was insufficient to trigger an evaluation of it by the habeas court for the purpose of determining whether the petitioner had made a showing of actual innocence sufficient to warrant a new trial.

We initially turn to our Supreme Court's decision in *Summerville* v. *Warden*, 229 Conn. 397, 641 A.2d 1356 (1994), for enlightenment regarding substantial claims of actual innocence. In *Summerville*, the court held that "a substantial claim of actual innocence is cognizable by way of a petition for a writ of habeas corpus, even in the absence of proof by the petitioner of an antecedent constitutional violation that affected the result of his criminal trial." Id., 422. The court recognized that the

---

[3] In his amended petition, the petitioner claimed that he was "factually innocent." Although the phrase "actual innocence" does not appear in his petition, we view the petitioner's claim as one of actual innocence and attribute no significance to the slightly different terminology.

standard of proof for such claims "should be more demanding than a probability of a different result." Id., 431. The probability of a different result is a component of the standard used to evaluate a petition for a new trial on the ground of newly discovered evidence. *Taborsky* v. *State*, 142 Conn. 619, 623, 116 A.2d 433 (1955) (standard for new trial primarily whether injustice done and whether probable that if new trial conducted, different result would be reached). The *Summerville* court concluded that such a standard did not fit the interests at stake in a habeas petition where the petitioner makes a substantial claim of actual innocence; *Summerville* v. *Warden*, supra, 431; but declined to specify which "more demanding" legal standard or burden of proof for such a claim of actual innocence should govern. Id., 432–33.

The United States Supreme Court has repeatedly noted that " 'a standard of proof represents an attempt to instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.' " *Schlup* v. *Delo*, 513 U.S. 298, 325, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995), quoting *In re Winship*, 397 U.S. 358, 370, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); see also *Addington* v. *Texas*, 441 U.S. 418, 423, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979).

A number of factors must be weighed in determining the issue of what the standard of proof ought to be when a petitioner makes, via a habeas petition, a substantial claim of actual innocence. A determination of the correct standard necessarily involves the recognition of the tension between the mandate of General Statutes § 52-470 (a) that the habeas court "dispose of the case as law and justice require," which involves a reassessment of a situation where it is claimed that a person, although fairly convicted, may have been actually innocent, with the benefit of new evidence, and the effect

on finality and justice that the passage of time has or will have on the state's evidence in the event of a retrial, as well as on the reliability of the fact-finding process itself. *Summerville* v. *Warden*, supra, 229 Conn. 432.

In determining the correct standard for the resolution of that issue, the *Summerville* court turned for guidance to other standards,[4] including the standard articulated by Justice White in his concurring opinion in *Herrera* v. *Collins*, 506 U.S. 390, 429, 113 S. Ct. 853, 122 L. Ed. 2d 203 (1993). *Summerville* v. *Warden*, supra, 229 Conn. 434–35. To be entitled to relief under that standard, a habeas "petitioner would at the very least be required to show that based on proffered newly discovered evidence and the entire record before the jury that convicted him, *no rational trier of fact could [find] proof of guilt beyond a reasonable doubt*." (Emphasis added; internal quotation marks omitted.) *Herrera* v. *Collins*, supra, 429 (White, J., concurring). The *Summerville* court, in declining to specify the legal standard for a claim of actual innocence,[5] concluded that the evidence in that case "was insufficient to trigger an evaluation of it by the habeas court for the purpose of determining whether the petitioner had made a showing of actual innocence sufficient to require a new trial." *Summerville* v. *Warden*, supra, 436–37.

In the present case, the habeas court adopted Justice White's standard in *Herrera* requiring a habeas petitioner "to show that based on proffered newly discovered evidence and the entire record before the jury that

---

[4] We note our Supreme Court's elucidative analysis of the various legal standards that may be appropriate for evaluating a habeas petitioner's claim of actual innocence. In view of our resolution of this case, we need not discuss them further.

[5] The court noted that in light of the recent expanding scope of habeas petitions, it is not surprising that "[n]one of our prior habeas corpus jurisprudence . . . supplies us with a ready standard for this type of case." *Summerville* v. *Warden*, supra, 229 Conn. 431.

convicted him, no rational trier of fact could [find] proof of guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *Herrera* v. *Collins,* supra, 506 U.S. 429 (White, J., concurring). Applying that standard, the habeas court concluded that "the petitioner's proffered evidence falls short of his burden. Even if Aranjo's testimony were to be believed, Needham, an eyewitness and victim, testified that the petitioner was actively involved in the criminal action, appeared to be in charge of that activity, robbed Needham of some money, brandished a gun, and fired at the fleeing victims. A rational jury could believe Needham's version of events and find the petitioner guilty of felony murder beyond a reasonable doubt."

The petitioner argues that the habeas court, by adopting the standard articulated by Justice White, applied the incorrect standard and urges this court to adopt a less stringent standard. The petitioner invites this court to implement the standard set forth in *Murray* v. *Carrier,* 477 U.S. 478, 496, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986). That standard is to be used in extraordinary cases of claimed actual innocence and requires a habeas petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Id.

Before reaching the merits of whether the writ should issue, which of necessity requires a determination of which standard of proof to apply, we must first decide whether a substantial claim of actual innocence, in a case in which there has been no infringement of the petitioner's constitutional rights during his criminal trial, must be premised on newly discovered evidence. To permit a petitioner to bring a substantial claim of actual innocence based on evidence that is not newly discovered would be inconsistent with our Supreme Court's conclusion that the standard governing a claim of actual innocence should be more demanding than

the standard used for determining whether a new trial should be granted because of newly discovered evidence. See *Summerville* v. *Warden,* supra, 229 Conn. 431. We, therefore, hold that a substantial claim of actual innocence, as recognized by *Summerville,* must be based on newly discovered evidence. We view this holding as one that balances the societal interests of finality, comity, and conservation of scarce judicial resources, against the benefit of "dispos[ing] of the case as law and justice require." General Statutes § 52-470 (a). Entertaining claims of actual innocence that are not based on newly discovered evidence would have a disruptive effect on the finality of judgments because it would permit a petitioner to raise allegations that, absent proof of an antecedent constitutional violation that affected the result of his criminal trial, could have been raised at the criminal trial.

In light of the holding in *Summerville,* we must now review the petitioner's claim of actual innocence to determine if that claim is predicated on newly discovered evidence.[6] The underlying premise of the petitioner's claim is that Aranjo's testimony shows that the petitioner has suffered a miscarriage of justice and is factually innocent, and, as such, the petitioner is entitled to a new trial.[7]

---

[6] Ordinarily, this might be a factual question for the habeas court to resolve. There is no indication, however, in the habeas court's memorandum of decision that this issue was addressed, and there is no evidence in the record from which the habeas court could find the evidence in support of the petitioner's claim of actual innocence to be newly discovered. We, therefore, make the determination. Similarly, in *Summerville* v. *Warden,* supra, 229 Conn. 436–37, the court concluded by implication that there was no evidence from which the habeas court could conclude that, under any of the various standards of proof, the petitioner could prevail.

[7] In his petition, the petitioner claimed that he suffered a miscarriage of justice at his criminal trial because his trial counsel failed to present exculpatory testimony from *"available witnesses,"* including, but not necessarily limited to Aranjo. (Emphasis added.) At the petitioner's habeas hearing, however, the only exculpatory witness to testify was Aranjo. Further, the petitioner failed to provide the habeas court with any affidavits from

In determining whether a new trial should be granted because of newly discovered evidence, a petitioner must demonstrate, by a preponderance of the evidence, that the proffered evidence is such that it could not have been discovered earlier by the exercise of *due diligence. Johnson* v. *State,* 36 Conn. App. 59, 63, 647 A.2d 373, cert. denied, 231 Conn. 946, 653 A.2d 827 (1994), citing *Asherman* v. *State,* 202 Conn. 429, 521 A.2d 578 (1987). We incorporate the due diligence component[8] of the standard used in determining whether a new trial should be granted because of newly discovered evidence in the determination of whether a writ of habeas corpus should issue as a result of a petitioner's claim of actual innocence. Accordingly, the pivotal initial inquiry in this appeal is whether the petitioner demonstrated that Aranjo's testimony could not have been discovered prior to the petitioner's criminal trial by the exercise of due diligence.

"Due diligence does not require omniscience." *Kubeck* v. *Foremost Foods Co.,* 190 Conn. 667, 672, 461 A.2d 1380 (1983). " 'Due diligence means doing everything reasonable, not everything possible.' " Id., quoting *People* v. *Sullivan,* 97 Mich. App. 488, 493, 296 N.W.2d 81 (1980). The petitioner for a new trial must be " 'diligent in his efforts fully to prepare his cause for trial; and if the new evidence relied upon *could have been known with reasonable diligence,* a new trial will not

potential witnesses offering exculpatory testimony. Therefore, the petitioner's claim of actual innocence centers around the testimony of Aranjo and the fact that he was not called as a witness at the criminal trial even though the petitioner's defense counsel had prepared an investigation request indicating that Aranjo was an eyewitness to the shooting.

[8] The standard that governs the granting of a petition for a new trial based on newly discovered evidence is comprised of four components: "(1) the proffered evidence is newly discovered, such that it could not have been discovered earlier by the exercise of due diligence; (2) it would be material on a new trial; (3) it is not merely cumulative; and (4) it is likely to produce a different result in a new trial." *Asherman* v. *State,* supra, 202 Conn. 434.

be granted.' " (Emphasis added.) *Malaspina* v. *Itts*, 3 Conn. Cir. Ct. 651, 654–55, 223 A.2d 54 (App. Div. 1966), quoting *White* v. *Avery*, 81 Conn. 325, 328, 70 A. 1065 (1908).

No evidence was adduced at the habeas hearing that would permit the habeas court properly to conclude that Aranjo's testimony could not have been discovered as a result of due diligence. To the contrary, there was uncontroverted testimony from the defendant's trial counsel who admitted he personally prepared an investigation request that indicated that Aranjo was an eyewitness to the shooting. We conclude, upon review of the evidence presented at the habeas hearing, that the petitioner failed to demonstrate that Aranjo's testimony could not have been discovered by the exercise of due diligence, and, therefore, such evidence does not constitute newly discovered evidence. Thus, the petitioner's claim of actual innocence is lacking the requisite predicate for evaluation under any legal standard and must fail. See *Summerville* v. *Warden*, supra, 229 Conn. 397.

Under the facts of the present case, it would be no more necessary for this court to answer the question left open in *Summerville*, namely, what is the appropriate standard for habeas courts to apply when evaluating a substantial claim of actual innocence, absent proof of an antecedent constitutional violation that affected the result of his criminal trial, than it was necessary for the Supreme Court in *Summerville* to establish such a standard. The *Summerville* court failed to reach the issue of which standard of proof to apply because under any of the various standards considered by the court,[9] from the most stringent to the most relaxed, the petitioner's evidence fell short of establishing that the writ

---

[9] In considering the various standards, the *Summerville* court did not intend to preclude the possibility of yet another standard for such a claim. *Summerville* v. *Warden*, supra, 229 Conn. 436 n.22.

of habeas corpus should be issued on the ground that the petitioner was actually innocent. We also fail to reach the issue.

We conclude that a writ of habeas corpus cannot issue unless the petitioner first demonstrates that the evidence put forth in support of his claim of actual innocence is newly discovered. Because the petitioner failed to make such a demonstration and because no evidence exists in the record that would permit the habeas court to conclude that the evidence at issue is newly discovered, we need proceed no further.

We concur with the habeas court's denial of the habeas writ on the basis of the petitioner's claim of actual innocence, although on a different basis. We, therefore, do not adopt the legal standard employed by the habeas court in reaching its decision. This court may, however, affirm a trial court's decision even though it is based on other grounds if the same result is required by law. *Kelley* v. *Bonney*, 221 Conn. 549, 592, 606 A.2d 693 (1992); *Brunswick* v. *Inland Wetlands Commission*, 25 Conn. App. 543, 554, 596 A.2d 463 (1991), rev'd on other grounds, 222 Conn. 541, 610 A.2d 1260 (1992).

The judgment is affirmed.

In this opinion the other judges concurred.