[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision
The petitioner, Charles Batts, alleges in his petition for a Writ of Habeas Corpus initially filed on September 30, 1996 and amended on December 2, 2002,[1] that he is actually innocent of the charges that led to his incarceration. This matter came on for trial before this Court on January 31, 2003 at which time testimony was received from the petitioner, Mr. Anthony Lewis, Mr. Timothy Dobson and Major Nelson Garcia. Documentary evidence was also received, including, inter alia,
the transcript of the petitioner's trial on the underlying matter. For the reasons set forth more fully below, the petitioner has failed in meeting his burden of proof and the petition shall be denied.
As regards the claim of actual innocence, the petitioner alleges that he did not commit the assault upon Corrections Officer Caruso despite the verdict of the jury.
The Court has reviewed all of the testimony and evidence and makes the following findings of fact.
Findings of Fact
1. The petitioner was the defendant in a case in the Judicial District of Danbury, under Docket Number CR95-0091713 entitled State v. Batts. On August 9, 1996 he was convicted by a jury of six of one count of an assault upon Corrections Officer Caruso in violation of CGS §53a-167c.[2] The petitioner was acquitted of a second count of assault upon Corrections Officer Longo. He was sentenced by the Court, Stodolink, J. on September 24, 1996 to a total effective sentence of ten years, consecutive to his existing sentences.
2. The petitioner represented himself at his trial having declined the services of the public defender to which he was entitled. CT Page 1821
3. The appeal of this conviction was dismissed when the petitioner, who was again acting as his own attorney, failed to file a brief.
4. The criminal charges arose out of an incident that occurred at the Garner Correctional Institution on January 27, 1995. The petitioner had recently been transferred to that institution from the McDougall Correctional Institution. While an inmate at McDougall, the petitioner had been allowed to have a radio, however at Garner, this radio was too big and was not allowed into the prison. The petitioner wished to make a telephone call to the property officer at McDougall and wanted to use the telephone in CO Caruso's office. CO Caruso refused this request by the petitioner and an argument ensued. After some fifteen minutes of this verbal exchange, CO Caruso stated that he had had enough and was going to write the petitioner up for a disciplinary ticket. With that, CO Caruso left the cellblock. Almost immediately thereafter, the announcement for the noon meal was made and the prisoners began to exit the sally port. The petitioner hurried through the port and began to rapidly walk down the corridor leading to the dining room to catch up to Corrections Officer Caruso. Upon overtaking Corrections Officer Caruso, the petitioner renewed the argument and demanded to know why Corrections Officer Caruso was writing him up for a disciplinary ticket. The petitioner is a large man, approximately six foot, two inches tall and of substantial build, at least 250 pounds. Officer Caruso is a smaller individual. The petitioner had backed Officer Caruso up against the wall of the corridor, was arguing in an agitated manner and was gesturing with his hand, shaking his finger about five inches from Officer Caruso's face. Officer Caruso put his hand up in a defensive manner and the petitioner then struck Corrections Officer Caruso. At that point, Officer Caruso called for help and when Corrections Officer Longo arrived at the scene both of them were able to subdue the petitioner.
5. The petitioner introduced the testimony of eight inmates at his trial. Five of these inmates testified that they did not observe the incident. One could not recall and two others gave a version of what took place that included Corrections Officer Caruso striking the blow, not the petitioner.
6. The petitioner elected to exercise his right to silence and did not testify at his trial.
7. Pursuant to a discovery request and prior to the commencement of trial, the petitioner was afforded a list of names of inmates who were assigned to the housing unit at Garner on the date of the incident.
8. The names of Anthony Lewis and Timothy Dobson were on that list. CT Page 1822
9. At the habeas trial before this Court, the petitioner did testify and denied striking Corrections Officer Caruso. Instead, he testified that Officer Caruso struck him in the left eye, causing it to bleed and dazing him. The petitioner reports that while he was standing in this dazed state, Corrections Officer Longo came up behind him and ordered him to place his hands behind his back at which point he was handcuffed. The petitioner admitted to having pled guilty to a disciplinary ticket at the prison in which he was charged with the assault upon Officer Caruso.
10. The petitioner has received 141 disciplinary tickets while he has been incarcerated, some of which are for providing false information.
11. Inmate Anthony Lewis testified at the habeas trial and reported that he was a witness to the incident that took place on January 27, 1995. Inmate Lewis stated that the petitioner was standing with his back to the wall and without any provocation Officer Caruso struck the petitioner, immediately causing him to drop to the floor unconscious. Thereafter, Inmate Lewis reported that both Corrections Officers began to beat the petitioner.
12. Inmate Timothy Dobson provided nearly identical testimony at the habeas trial.
13. The testimony offered by Inmates Dobson and Lewis is evidence that could have been discovered by the petitioner at the time of his original trial with the exercise of due diligence.
 I
Discussion of Law
The petitioner comes before this Court with a claim of actual innocence in regard to the offense of which jury found him guilty after a trial. He faces two difficult obstacles to overcome before relief may be granted. First, "taking into account both the evidence produced in the original criminal trial and the evidence produced in the habeas hearing, the petitioner must persuade the habeas court by clear and convincing evidence, as that standard is properly understood and applied in the context of such a claim, that the petitioner is actually innocent of the crime of which he stands convicted. Second, the petitioner must establish that, after considering all of that evidence and the inferences drawn therefrom, . . . no reasonable fact finder would find the petitioner guilty." Miller v. Commissioner of Correction, 242 Conn. 745 at 791-92
(1997). CT Page 1823
It is important at the outset to understand a critical difference between the legal status of a person who has been accused of a crime as opposed to one who has been convicted of a crime. While the person who has been accused of a crime is entitled to a presumption of his or her innocence, the petitioner in a habeas corpus petition is not. "It is undoubtedly true that `[a] person when first charged with a crime is entitled to a presumption of innocence, and may insist that his guilt be established beyond a reasonable doubt. In re Winship, 397 U.S. 385,90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).' Herrera v. Collins, 506 U.S. 390,113 S.Ct. 853, 859, 122 L.Ed.2d 203 (1993) . . . The presumption of innocence, however, does not outlast the judgment of conviction at trial." Summerville v. Warden, 229 Conn. 397 at 422-23 (1994). Consequently, even though "a substantial claim of actual innocence is cognizable by way of a petition for a writ of habeas corpus, even in the absence of proof by the petitioner of an antecedent constitutional violation that affected the result of his criminal trial," Summervillev. Warden, 229 Conn. 397 at 422 (1994), the burden of proving this rests with the petitioner. "Thus, in the eyes of the law, [the] petitioner does not come before the Court as one who is `innocent,' but on the contrary as one who has been convicted by due process of law." Summerville v.Warden, infra. at 422.
 I.
The Newly Discovered Evidence Rule
There is a threshold question regarding the issue of whether the testimony of the two inmates and the petitioner should even be considered by this Court. "The respondent asserts that a claim of actual innocence, when raised in a habeas corpus proceeding, must be based on newly discovered evidence. To be considered `newly discovered,' `the evidence must be such that it is not cumulative, was not available to the petitioner at his criminal trial and could not have been discovered prior to the criminal trial through the exercise of due diligence.' In Clarkev. Commissioner of Correction, 249 Conn. 350, 375-58 (1999), our Supreme Court has left the absolute requirement of `newly discovered evidence' an open question in our habeas jurisprudence `until the actual outcome of the case is likely to depend on the answer to the legal question.' Id.
at 351." LaPointe v. Warden, No. CV 97-0571161 (Sep. 6, 2000), Freed, J. Although having been presented with several opportunities to do so,[3]
our Supreme Court has declined to make the definitive statement. Consequently, while the final rule in this state may be to the contrary, as it stands at this time, the operative appellate decision on this issue is Clarke v. Commissioner, 43 Conn. App. 374 (1996). CT Page 1824
In Clarke, the Appellate Court "concluded that although no governing standard of proof exists under which a claim of actual innocence should be evaluated,[4] such a claim must nonetheless, be based on newlydiscovered evidence. Williams v. Commissioner of Correction, supra,41 Conn. App. 527. [The Appellate Court] concluded that `a writ of habeas corpus cannot issue unless the petitioner first demonstrates that the evidence put forth in support of his claim of actual innocence is newly discovered.' (Emphasis added.) Id., 530. Moreover, `[it] incorporate[d] the due diligence component of the standard used in determining whether a new trial should be granted because of newly discovered evidence in the determination of whether a writ of habeas corpus should issue as a result of a petitioner's claim of actual innocence.' Id., 528. Thus, [it] held that `a petitioner must demonstrate, by a preponderance of the evidence, that the proffered evidence is such that it could not have been discovered earlier by the exercise of due diligence.'" Clarke, supra,
at 379.
So, at least for the present, the petitioner must demonstrate that the testimony of Inmates Lewis and Dobson is newly discovered evidence by proving with a preponderance of the evidence that he could not have discovered such evidence earlier through the exercise of due diligence. It is clear that the testimony offered by the petitioner cannot be considered newly discovered evidence. In the absence of some sort of persuasive evidence that the petitioner suffered from a transitory amnesia at the time of his original trial that prevented him from remembering the events of January 27, 1995, his testimony cannot ever be considered newly discovered. While the petitioner has an absolute right to use the protections of the Fifth Amendment as a shield and remain silent, he cannot use it as a sword to seek a new trial at a significantly later time by deciding to testify years later.[5]
It is problematic for the petitioner to prove with a preponderance of the evidence that he was not aware of the potential exculpatory evidence of Inmates Lewis and Dobson. At his original trial he sought and obtained a list of inmates that were assigned to his housing unit and who might have been witnesses to the incident. This list was furnished to the petitioner in sufficient time for him to request the presence of both Lewis and Dobson. Both of the names were on the list and the petitioner did not call them to testify. It is true that the petitioner was somewhat hampered in his ability to prepare for trial as he was already a sentenced prisoner, indigent, and unable to employ a private investigator. Nevertheless, it was the petitioner's own decisions that put him in that situation. He declined to be represented by the attorneys assigned to the staff of the Public Defender's office.[6] Any CT Page 1825 difficulty he may have experienced in uncovering the testimony of Dobson and Lewis was, unfortunately, of his own doing. Given that the names of both inmates disclosed to the petitioner before his trial, this Court can only conclude that any testimony that they might offer today is not newly discovered.
While the decision of this Court in regard to the question of newly discovered evidence is a resolution of this matter and a sufficient basis, in and of itself, to deny the petition, the Court will continue to analyze the claim of actual innocence as if the newly discovered evidence rule had been satisfied.[7]
 II
The Claim of Actual Innocence
It is well settled in Connecticut that a claim of actual innocence may be raised in a petition for habeas corpus even where that claim does not allege a claim that the petitioner's state or federal constitutional rights have been violated. See Summerville v. Warden, 229 Conn. 397
(1994), and Clarke vs. Commissioner, 43 Conn. App. 374 (1996). In order to prevail in such a claim, a petitioner must overcome two very large obstacles. "First, taking into account both the evidence produced in the original criminal trial and the evidence produced in the habeas hearing, the petitioner must persuade the habeas court by clear and convincing evidence, . . . that the petitioner is actually innocent of the crime of which he stands convicted. Second, the petitioner must establish that after considering all of that evidence and the inferences drawn therefrom . . . no reasonable fact finder would find the petitioner guilty." Millerv. Commissioner, 242 Conn. 745, 791-92 (1997). Unlike the original criminal trial in which the petitioner (then the defendant) enjoyed the presumption of innocence with the burden of proving his guilt beyond all reasonable doubt resting upon the prosecutor, in the habeas proceeding, the burden of proof rests upon the petitioner. This is so because of the "fact that in many cases an order for a new trial may in reality reward the accused with complete freedom from prosecution because of the debilitating effect of the passage of time on the state's evidence."Summerville vs. Warden, supra. Furthermore, there is a strong societal interest "in not degrading the properly prominent place given to the original trial as the forum for deciding the question of guilt or innocence within the limits of human fallibility." Id. This latter reason is particularly compelling when the original verdict was the result of a trial by jury.
The burden of proof in a habeas proceeding in which the claim is actual CT Page 1826 innocence requires that "the habeas court first must be convinced by clear and convincing evidence that the petitioner is actually innocent. The clear and convincing standard of proof is substantially greater than the usual civil standard of a preponderance of the evidence, but less than the highest legal standard of proof beyond a reasonable doubt."Miller v. Commissioner, supra, at 794. Clear and convincing evidence must "induce in the mind of a trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." State v. Bonello, 210 Conn. 51 at 66, cert. den.490 U.S. 1082, 109 S.Ct. 2103, 104 L.Ed.2d 664 (1989).
The petitioner has been tried before a jury of his peers and found to be guilty beyond all reasonable doubt. The right to a trial by jury is one of our most sacred rights in the Anglo-American system of jurisprudence with its roots running back to that field at Runnymeade in 1215 AD where King John[8] was forced by his nobles to sign that document we still call the Magna Carta. Courts have, and continue to, afford extraordinary deference to a decision made by the jury. In a habeas claim involving the claim of actual innocence, the petitioner asks this Court to set aside that jury verdict and order a new trial and that is one of the reasons that there is such a high standard for the petitioner to overcome in order to achieve relief. The "clear and convincing" standard that this Court must apply "should operate as a weighty caution upon the minds of all judges and it forbids relief whenever the evidence is loose, equivocal or contradictory." Lopinto v.Haines, 185 Conn. 527 at 539 (1981). Given all of this, it is clear that the petitioner is simply unable to meet this burden.
The "new"[9] evidence produced by the petitioner was his own testimony and the testimony of two inmates. This evidence simply is not convincing. First, all of the witnesses are convicted felons, a factor that has an adverse effect and may be considered when determining the credibility of any witness.[10] Second, it was apparent from the testimony of all three inmate witnesses that there is a significant tension between the Corrections officials and the inmates. Third, the testimony was inconsistent and contradictory. For example, Inmate Lewis testified, contrary to the story put forth by the petitioner, that it was the petitioner with his back to the wall, not Officer Caruso, and that Officer Caruso "sucker punched" the petitioner causing him to "drop like a sack of potatoes." That latter fact, of course, contradicts the statement of the petitioner that he remained standing and meekly placed his hands behind his back to be handcuffed when directed to do so. Inmate Dobson's testimony was remarkably similar to that of Inmate Lewis. Finally, despite the denials of both inmates, the potentiality for CT Page 1827 collusion between them as well as with the petitioner was high. Given all of this, it is difficult to say that the testimony was anything except "loose, equivocal or contradictory."
Petitioner's counsel argued that she had established a reasonable doubt of the petitioner's guilt. While there is the possibility that some triers of fact might find that there was indeed a reasonable doubt to the petitioner's guilt, that is not the standard that this Court must use. Not only must the petitioner prove with clear and convincing evidence that he is actually innocent (something that he failed to do) he must also prove that no reasonable finder of fact would find the petitioner guilty.Miller v. Commissioner, 242 Conn. 745 at 802 (1997). The evidence adduced in this trial, coupled with the evidence from the petitioner's original trial, fails to do so.
Accordingly, the Petition for a Writ of Habeas Corpus is denied.
S.T. Fuger, Jr., Judge