******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

PATRICK NEMHARD *v.* COMMISSIONER
OF CORRECTION
(AC 35681)

Beach, Keller and Pellegrino, Js.

*Argued January 21—officially released May 19, 2015*

(Appeal from Superior Court, judicial district of
Tolland, Sferrazza, J.)

*Cameron R. Dorman*, assigned counsel, for the appellant (petitioner).

*Michele C. Lukban*, senior assistant state's attorney,
with whom, on the brief, were *John C. Smriga*, state's
attorney, and *Craig P. Nowak*, senior assistant state's
attorney, for the appellee (respondent).

*Opinion*

PELLEGRINO, J. The petitioner, Patrick Nemhard, appeals from the judgment of the habeas court dismissing his petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly dismissed his claim on the ground that his witness in support of his claim of duress[1] does not constitute newly discovered evidence.[2] We disagree and, accordingly, affirm the judgment of the court.

The petitioner was convicted of rioting in a correctional institution in violation of General Statutes § 53a-179b (a),[3] for which he was sentenced to twenty years incarceration, execution suspended after fifteen years, and five years of probation. On his direct appeal, the judgment of conviction was affirmed by this court in a per curiam decision; *State* v. *Nemhard*, 39 Conn. App. 930, 667 A.2d 571 (1995); and at least three habeas petitions have been rejected regarding this conviction. See, e.g., *Nemhard* v. *Rodriguez*, United States District Court, Docket No. 3:01-cv-1700 (JCH) (D. Conn. September 20, 2004); *Nemhard* v. *Commissioner of Correction*, 63 Conn. App. 906, 773 A.2d 1002, cert. denied, 257 Conn. 906, 777 A.2d 193 (2001); *Nemhard* v. *Commissioner of Correction*, 56 Conn. App. 527, 745 A.2d 190 (2000).

This habeas petition, filed August 5, 2010, and amended on June 11, 2012, claims actual innocence on the basis of newly discovered evidence of a witness who claimed the petitioner had acted under duress.[4] The petitioner at the habeas trial called Raphael Ortiz, an inmate in the same correctional institution as the petitioner at the time of the incident, who testified that, prior to the rioting, he observed some gang members, one of whom was a person named Buddy, tell the petitioner that he had to do what he was told to do or otherwise he would get hurt. Ortiz spoke with the petitioner at that time and advised him not to get involved. Ortiz never mentioned what he saw because he feared for his own safety and did not know the petitioner's name. Further, Ortiz testified that in the morning after the riot, when prison staff members asked him if he knew anything, he told them that he had "seen some kid getting pressured earlier" and did not know if that was part "of what was going on." As a result of that statement, Ortiz was placed in segregation and initially suspected of having participated in a planned escape. Sometime thereafter, at another correctional institution, Ortiz recognized the petitioner and passed him a note about the events prior to the riot and regarding the encounter with Buddy.

At the conclusion of Ortiz' testimony and after the petitioner rested his case, the respondent, the Commissioner of Correction, orally moved to dismiss the petition for failure of the petitioner to state a claim. Then,

the respondent, in elaborating on his oral motion, focused on the evidence that the petitioner presented at the habeas trial, namely, Ortiz' testimony, and not on the petitioner's pleadings. Thereafter, the court dismissed the petitioner's amended petition in an oral decision. Regarding the petitioner's actual innocence claim, the court stated the following with respect to the applicability of the newly discovered evidence standard: "I have to apply the newly discovered evidence standard, and newly discovered evidence is such that it couldn't have been discovered, despite the exercise of due diligence. . . .

"And due diligence is reasonable. It doesn't require everything possible, but the question . . . to be answered is, what evidence would have been discovered by a reasonable criminal defense attorney by persevering application and untiring efforts in good earnest . . . .

"[Y]ou can't describe as newly discovered evidence evidence which the petitioner had at the time of his criminal trial. . . .

"And I think that's what we have in this case. The petitioner knew that he was under duress. . . . He would have been able to tell his attorneys and share that information.

"He would have known who . . . were witnesses to that duress, including [Ortiz], who apparently had a conversation with the petitioner at the time before the events that occurred . . . and the only evidence I have in front of me is that [Ortiz] recommended to the petitioner that he stay in his cell and not join in; and the petitioner indicated that he was perhaps down with it or he understood and everything would be okay.

"So, under those circumstances, there's no way to characterize this evidence and this duress defense as newly discovered . . . ." Thereafter, the court granted the respondent's motion to dismiss, and on April 25, 2013, the court granted the petition for certification to appeal to this court.

On appeal, the petitioner claims that the court improperly dismissed his claim on the ground that the evidence to support his claim of duress, namely, Ortiz' testimony, does not constitute newly discovered evidence. We disagree.

It is clear from the foregoing that the court based its decision not on the petitioner's failure to state a claim in his petition, but on the basis of the evidence presented during the petitioner's case-in-chief. Therefore, despite the respondent's characterization that the petitioner failed to state a claim, we believe this matter is before us on the ground that the court granted the respondent's motion to dismiss on the basis of the petitioner's failure to present a prima facie case, which, under Practice Book § 15-8,[5] is appropriate given the timing of the

motion, which occurred after the petitioner rested his case and before the respondent presented any evidence. We set forth the applicable standard of review for a motion to dismiss for failure to present a prima facie case. "The conclusions reached by the trial court in its decision to dismiss [a] habeas petition are matters of law, subject to plenary review. . . . [When] the legal conclusions of the court are challenged, [the reviewing court] must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record." (Internal quotation marks omitted.) *McMillion* v. *Commissioner of Correction*, 151 Conn. App. 861, 869–70, 97 A.3d 32 (2014).

"The legal principles governing a trial court's decision to dismiss a claim for failure to present a prima facie case pursuant to Practice Book § 15-8 are well settled. A prima facie case, in the sense in which that term is relevant to this case, is one sufficient to raise an issue to go to the trier of fact. . . . In order to establish a prima facie case, the proponent must submit evidence which, if credited, is sufficient to establish the fact or facts which it is adduced to prove. . . . In evaluating the [granting of] a motion to dismiss, [t]he evidence offered by the plaintiff is to be taken as true and interpreted in the light most favorable to [the plaintiff], and every reasonable inference is to be drawn in [the plaintiff's] favor. . . . Whether the plaintiff has established a prima facie case entitling the plaintiff to submit a claim to a trier of fact is a question of law over which [this court's] review is plenary." (Citations omitted; internal quotation marks omitted.) Id., 870–71.

To prove actual innocence the petitioner must be able "to show that based on proffered newly discovered evidence and the entire record before the jury that convicted him, no rational trier of fact could [find] proof of guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *Williams* v. *Commissioner of Correction*, 240 Conn. 547, 548, 692 A.2d 1231 (1997). "Actual innocence, also referred to as factual innocence . . . is different than legal innocence. Actual innocence is not demonstrated merely by showing that there was insufficient evidence to prove guilt beyond a reasonable doubt. . . . Rather, actual innocence is demonstrated by affirmative proof that the petitioner did not commit the crime. . . .

"[T]he proper standard for evaluating a freestanding claim of actual innocence . . . is twofold. First, the petitioner must establish by clear and convincing evidence that, taking into account all of the evidence—both the evidence adduced at the original criminal trial and the evidence adduced at the habeas corpus trial—he is actually innocent of the crime of which he stands convicted. Second, the petitioner must also establish that, after considering all of that evidence and the inferences drawn therefrom as the habeas court did, no

reasonable fact finder would find the petitioner guilty of the crime." (Citation omitted; internal quotation marks omitted.) *Jackson* v. *Commissioner of Correction*, 149 Conn. App. 681, 706, 89 A.3d 426, cert. granted on other grounds, 313 Conn. 901, 96 A.3d 558 (2014).

Further, we note: "To permit a petitioner to bring a substantial claim of actual innocence based on evidence that is not newly discovered would be inconsistent with our Supreme Court's conclusion that the standard governing a claim of actual innocence should be more demanding than the standard used for determining whether a new trial should be granted because of newly discovered evidence. . . . We view this holding as one that balances the societal interests of finality, comity, and conservation of scarce judicial resources, against the benefit of 'dispos[ing] of the case as law and justice require.' General Statutes § 52-470 (a). Entertaining claims of actual innocence that are not based on newly discovered evidence would have a disruptive effect on the finality of judgments because it would permit a petitioner to raise allegations that, absent proof of an antecedent constitutional violation that affected the result of his criminal trial, could have been raised at the criminal trial." (Citation omitted.) *Williams* v. *Commissioner of Correction*, 41 Conn. App. 515, 526–27, 677 A.2d 1 (1996), appeal dismissed, 240 Conn. 547, 692 A.2d 1231 (1997) (certification improvidently granted). "This evidentiary burden is satisfied if a petitioner can demonstrate, by a preponderance of the evidence, that the proffered evidence could not have been discovered prior to the petitioner's criminal trial by the exercise of due diligence." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 101 Conn. App. 465, 471, 922 A.2d 221 (2007).

Here, the petitioner argues that what is newly discovered is the fact that Ortiz, now identified, overheard the threats. Yet, according to Ortiz, he and the petitioner conversed regarding the initial threats from "Buddy." He did not only overhear them, but the petitioner also told Ortiz to mind his own business. Therefore, the evidence demonstrates that, despite perhaps not knowing the identity of Ortiz, the petitioner did know at the time of his criminal trial that a fellow inmate with whom he had conversed had overheard the alleged threats. Given this undisputed factual background, the petitioner cannot refute the habeas court's determination that Ortiz' identity was not newly discovered because it could have been discovered prior to the criminal trial by the exercise of due diligence. It is also undisputed that the petitioner never advised his attorneys at the time of his criminal trial that he had been under duress. The consequence of his failure to raise this issue with his trial attorneys is that no effort was made to explore his theory of duress or discover the identity of Ortiz. Therefore, the petitioner cannot succeed on his actual innocence claim because actual innocence alleged in a

habeas petition must be premised on newly discovered evidence that could not have been discovered by the exercise of due diligence prior to his criminal trial. Accordingly, we conclude that the court properly dismissed the petition for a writ of habeas corpus.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Duress is a statutorily defined defense. "In any prosecution for an offense, it shall be a defense that the defendant engaged in the proscribed conduct because he was coerced by the use or threatened imminent use of physical force upon him or a third person, which force or threatened force a person of reasonable firmness in his situation would have been unable to resist. The defense of duress as defined in this section shall not be available to a person who intentionally or recklessly places himself in a situation in which it is probable that he will be subjected to duress." General Statutes § 53a-14.

[2] The petitioner also asserts that the court improperly concluded that a claim of actual innocence must be predicated on newly discovered evidence and that we should overrule this court's decision in *Williams* v. *Commissioner of Correction*, 41 Conn. App. 515, 677 A.2d 1 (1996), appeal dismissed, 240 Conn. 547, 692 A.2d 1231 (1997) (certification improvidently granted). It is well established that "this court's policy dictates that one panel should not, on its own, [overrule] the ruling of a previous panel. The [overruling] may be accomplished only if the appeal is heard en banc." (Internal quotation marks omitted.) *Diaz* v. *Commissioner of Correction*, 125 Conn. App. 57, 68 n.9, 6 A.3d 213 (2010), cert. denied, 299 Conn. 926, 11 A.3d 150 (2011). We decline to depart from *Williams* and, therefore, do not analyze this claim.

[3] General Statutes § 53a-179b provides: "(a) A person is guilty of rioting at a correctional institution when he incites, instigates, organizes, connives at, causes, aids, abets, assists or takes part in any disorder, disturbance, strike, riot or other organized disobedience to the rules and regulations of such institution.

"(b) Rioting at a correctional institution is a class B felony."

[4] The petitioner also initially claimed ineffective assistance of trial counsel and ineffective assistance of habeas counsel. The petitioner later sought to withdraw these counts, whereas the respondent, the Commissioner of Correction, asked that these counts be dismissed with prejudice. Thereafter, the court dismissed these counts, and they are not the subject of this appeal.

[5] Practice Book § 15-8 provides: "If, on the trial of any issue of fact in a civil matter tried to the court, the plaintiff has produced evidence and rested, a defendant may move for judgment of dismissal, and the judicial authority may grant such motion if the plaintiff has failed to make out a prima facie case. The defendant may offer evidence in the event the motion is not granted, without having reserved the right to do so and to the same extent as if the motion had not been made."